Mabel W. ANDREWS

v.

Caspar WEINBERGER, Secretary Health,
Education & Welfare.

Civ. A. No. 74–0170–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 30, 1975.

James D. Hundley, Hundley, Taylor & Glass, Richmond, Va., for plaintiff.

Charles L. Beard, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Mabel W. Andrews brings an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary in which it was held that she was not en- titled to disability benefits upon an application filed September 12, 1972. The sole issue before the Court is whether the final decision of the Secretary is based upon substantial evidence. See 42 U.S.C. § 405(g). The defendant has moved for summary judgment and the plaintiff has responded with a brief in opposition thereto. The matter is ready for disposition.

The function of the Court is not to try this matter *de novo*, nor to resolve mere conflicts in the evidence. The Court, however, is duty bound to give careful scrutiny to the entire record to assure that there is a sound foundation for the Secretary's findings, and that his decision is rational. Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971); Bridges v. Gardner, 368 F.2d 86 (5th Cir. 1966); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1954); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

The facts are not in dispute. They are, as set forth by the defendant, as follows:

Plaintiff filed an application for a period of disability and for disability insurance benefits on September 19, 1972, alleging that she became unable to work in April 1972, at age 53. The application was denied initially and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration, after the Virginia State Agency, upon evaluation of the evidence by a physician and a disability examiner, had found that the plaintiff was not under a disability. The administrative law judge, before whom plaintiff, her attorney and a vocational expert appeared, considered the case *de novo*, and on December 18, 1973, found that the plaintiff was not under a disability. The administrative law judge's decision became the final decision of the Secretary when the Appeals Council approved that decision on March 7, 1974.

Plaintiff, born on May 28, 1918, completed 10 years of school and worked for 30 years at a Dupont fiber factory. Plaintiff alleged that she became dis-

abled on April 30, 1972 due to a pin in her hip and stomach ulcers. At her hearing she testified that she could not sit or stand for long periods of time, her low back was painful, and she had arthritis in her neck and shoulder.

A medical history contained in a company doctor's examination report stated that the plaintiff had walked with a limp since 1965 when she fell and injured her left hip and post-traumatic arthritis developed. Although she was treated by an orthopedic surgeon for several years subsequent to this injury, she continued to experience difficulty in standing and walking. Later, on October 1, 1970, plaintiff sustained a fracture of the left femoral neck.

Dr. Earnest L. Clements, Jr., an orthopedic surgeon, reported that x-ray examination on October 13, 1970 confirmed an impacted fracture of the hip and a multiple hip pin fixation was done at St. Mary's Hospital.

Office records of Dr. Robert W. Bedinger, an internist, included an entry dated December 4, 1970; the examination findings included marked restriction of hip motion because of pain. Medical impressions were moderately severe reactive depression, suspicion of gastritis with recent occurrence of nausea, hypertension of recent onset, and fibro cystic mastopathy. An entry dated December 11, 1970 noted no evidence of depression and no significant change in any of the physical findings.

A report of plaintiff's pension application physical examination performed on February 28, 1972 showed that the plaintiff returned to selective work on February 3, 1971. Her employer's record of an annual physical examination, dated March 15, 1971, showed that the plaintiff walked with a cane; followup for her hip condition was recommended. The pension application physical examination report further stated that the plaintiff's badly damaged hip was complicated by post-traumatic arthritis. She could not lift more than 15 pounds while standing, was unable to stoop, squat or climb, walked with a pronounced limp on the left and could not stand for more than two to three hours without rest. The report also listed adequately controlled hypothyroidism, a duodenal ulcer with recurrent attacks of pain, and emotional instability. The report further stated that plaintiff's limited ability to perform certain elements of her job could no longer be tolerated, and that there was no work available in the plant that the plaintiff could consistently perform satisfactorily.

An entry in Dr. Bedinger's office records, dated February 2, 1972 stated that the plaintiff had returned to the physical testing laboratory at Dupont. Within the past few days she was told that she must be retired on the basis of physical disability, apparently because she was restricted from standing for a full eight hours. A record entry showed that the plaintiff's current acute problem was headache and upper abdominal distress. Medical impressions were probable gastritis, probable hypothyroidism, minimal residual from the pinned fracture of her left hip and acute anxiety reaction; probable tension headache with migraine was not excluded.

A questionnaire completed September 30, 1972 by Dr. Clements showed that in an eight hour work day the plaintiff could stand and/or walk for one to two hours, sit for five to six hours, and lift up to 10 pounds occasionally. She could stoop, squat, crawl, and climb stairs and ladders occasionally. She could not use her feet for repetitive movements as in operating foot controls. There was no restriction in plaintiff's use of her hands and she could reach and work with arms extended at shoulder level.

Dr. Bedinger reported that the plaintiff was re-examined on September 27, 1972. His medical impressions were residual musculoskeletal symptoms from the old fracture of her left hip and midabdominal symptoms of undetermined significance. There was a previous history of dry skin, chilliness, constipation,

and leg cramps controlled coincident with thyroid supplement.

A consultative examination requested by the State agency was performed on March 15, 1973 by Dr. Franklin P. Watkins, an orthopedic surgeon; examination showed a good range of motion in the cervical and lumbosacral spine and in both hips. There were no positive neurological findings; motor and sensory function was normal. There was no muscle spasm or atrophy present. X-rays revealed arthritic changes in the cervical and lumbosacral spine; the hip pin and plate were in place in the left hip. Plaintiff's hip fracture was well healed; she was felt to be capable of doing work not requiring strenuous lifting or bending or possibly prolonged standing.

Dr. R. Finley Gayle, III, a psychiatrist, also examined the plaintiff at the State agency's request and reported on April 13, 1973 that he could find no real evidence of any psychiatric problems or emotional instability. In Dr. Gayle's opinion, most of plaintiff's symptoms seemed related to definitive physical disease.

A St. Luke's Hospital discharge summary signed by Dr. Bedinger concerned plaintiff's hospitalization from September 24 to October 2, 1973. Reported findings included a slightly irregular thyroid which was not enlarged, loss of normal lumbar lordosis, restriction of back leg raising, and slight impairment of left hip motion. X-rays of the lumbar spine and pelvis showed upper lumbar scoliosis to the right, general loss of mineral content in all bones, and a suggestion of slight narrowing of the L2–L1 interspace with hypertrophic arthritic change. Nail plate and screws in the left hip were satisfactory and stable. The plaintiff was also seen in consultation with Dr. Raymond Adams, a neurologist, Dr. Joseph Coxe, a surgeon, Dr. Clements, an orthopedic surgeon, and Dr. David Litchfield, an endocrinologist. Dr. Clements felt that plaintiff's hip status was satisfactory and that she need

not be restricted beyond the avoidance of heavy lifting, imperative standing, climbing, or any jumping. Dr. Litchfield's impression was non-specific arthritis and hip pain secondary to the orthopedic problem. Dr. Adams concluded that there were no signs of organic disease of the nervous system with the exception of left eye changes of life-long duration. Dr. Coxe's consultation showed that the plaintiff did not require surgery for her varicose veins. During this period of hospitalization, the plaintiff's blood pressure declined to a normal reading of 130/80; she was also treated for epigastric distress and lower abdominal discomfort associated with gastrointestinal studies. Diagnoses were osteoporosis of undetermined cause, status post operative pinning of left hip, lumbar osteoarthritis, varicose veins, abnormal blood cell content and a mild to moderate probable depressive reaction.

Dr. Bedinger's letter dated October 24, 1973 stated that plaintiff's functional capability of the past couple of years indicated that she had been disabled even though there was no concrete evidence of disability to qualify under the Social Security Regulations. Dr. Bedinger agreed with Dr. Adams that a consideration of the total physical and psychological factors supported a finding of disability. Dr. Bedinger commented that plaintiff's passive and withdrawn personality pattern might have contributed as much to her "disability" as had strictly physical factors.

In a letter dated November 16, 1973, Dr. Adams stated that his neurological examination failed to reveal any evidence of organic disease of the nervous system except for the slightly irregular contour of plaintiff's left pupil. It was Dr. Adams' opinion that the plaintiff was totally disabled due to the physical disorders demonstrated in the work-up by Dr. Bedinger and to the circumstances surrounding the method by which she was retired.

With regard to vocational and other data, plaintiff also testified that she

was first employed for six weeks operating an automatic machine that wrapped cigars in cellophane; she then worked for two years operating a machine that made paper bags. Plaintiff next packaged cigarettes for six weeks; in 1942 she began working in a Dupont fiber factory. In this position the plaintiff tended machines used in various operations in making nylon and subsequently worked in a laboratory, testing products for strength. The plaintiff last worked on April 30, 1972 and was retired on May 19, 1972 with a monthly retirement pension of $296. She also stated that she drove a car and went grocery shopping with her husband who continued to be employed at Dupont. The plaintiff watched television occasionally and read the daily newspaper.

Andrew V. Beale, Ed.D., a vocational expert, testified that he had examined the exhibits in the case and listened to plaintiff's testimony. Based on the administrative law judge's assumption that the plaintiff could do light and sedentary activity not requiring prolonged walking, standing, or sitting for more than four hours at a time, and considering her age, education, and previous work history, the vocational expert stated that the plaintiff could work as a catcher and inspector of cigarettes, monitor bag making machines, assemble components of gas and infra-red heaters or eyeglass frames, make and pack capsules, and be employed on a moving assembly line at a General Electric plant. Dr. Beale stated that he was personally familiar with these jobs and that they existed in significant numbers in the local economy. Plaintiff's earnings record shows that she will continue to meet the earnings requirement of the Act for disability purposes until December 30, 1976.

In order to qualify for disability benefits under § 223 of the Social Security Act, 42 U.S.C. § 423, there must be present:

1. A medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve months (42 U.S.C. § 423(d)(1)(A) and,

2. A factual determination that the impairment actually renders the plaintiff unable to engage in any gainful employment. See Hicks v. Richardson, No. 71–2196 (4th Cir., July 24, 1972); *Thomas, supra.*

Section 223(d)(2)(A) of the Act further defines "disability" as follows:

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers whether in the region where such individual lives or in several regions of the country.

In arguing that she is under a disability as defined in the Act, plaintiff notes that the medical opinions of two of the three physicians who examined her were that her maladies amounted to complete and total disability. As to the third physician, Dr. Watkins, plaintiff suggests that he only saw her on one occasion and that his opinion that she was capable of performing light work failed to take into account any of the other non-orthopedic medical problems experienced by her.

Plaintiff also contends that her subjective complaints are consistent with the clinical findings of the physicians and, therefore, can be used to show her degree of disability. Finally, she alleges that if all of her various medical problems were viewed as to their total im-

pact upon her ability to engage in gainful employment, then it cannot be said that the Secretary's findings were supported by substantial evidence contained in the record.

The Court has carefully reviewed the entire record herein and notes, first, that it is well within the authority of the administrative law judge to resolve any differences of opinion between various medical practitioners in arriving at his decision upon the ultimate issue of disability. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Moreover, as both departmental regulations, 20 C.F.R. § 404.1526, and judicial decisions, see, e. g., Kirkland v. Weinberger, 480 F.2d 46 (5th Cir.) cert. denied, 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973), make clear, qualified medical opinion is not conclusive of the ultimate fact of disability, but may serve as a premise for such a finding when supported by clinical techniques and other such evidence.

Based upon the record before it, and mindful of its limited scope of review in matters such as this, the Court concludes that the administrative law judge properly considered the medical evidence to determine whether it established that plaintiff was suffering from any impairment, either singly or in combination, the nature of which would meet the prescribed standards. Furthermore, while the evidence presented was that plaintiff could not return to her former employment, from which she was retired due to her impairments, the vocational expert did state that in his opinion work was available for the plaintiff in the region where she lives.

This being so, the Court finds that the administrative law judge's decision is supported by substantial evidence. Having reached that determination, the Court is barred from further inquiry. Accordingly, summary judgment will be granted for the defendant.

An appropriate order will issue.