371 A.2d 1326

**MONROEVILLE LAND COMPANY, INC., a corporation**

v.

**SONNENBLICK–GOLDMAN CORP. OF WESTERN PENNSYLVANIA, a corporation, et al.**

**Appeal of Sidney TROY.**

Superior Court of Pennsylvania.

Argued Nov. 9, 1976.

Decided March 31, 1977.

T. Lawrence Palmer, Pittsburgh, for appellant.

Harry J. Gruener, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFF-MAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in dismissing his preliminary objections to its *in personam* jurisdiction.[1] We affirm the order of the lower court.

In 1968, Monroeville Land Co., Inc., appellee, sought to secure interim and permanent financing for a commercial construction project in Monroeville, Allegheny County, Pennsylvania. Appellee planned to build an office building complex. Appellee is a Pennsylvania corporation with its principal office in Monroeville. On October 28, 1968, appellee entered an agreement with Sonnenblick-Goldman Corporation of Western Pennsylvania (hereinafter SBG–Pa.) whereby the latter undertook to negotiate for appellee any mortgage commitments necessary to ensure the financing of the Monroeville project. SBG–Pa. is a Pennsylvania corporation with its principal office in Pittsburgh; it is also the Pennsylvania affiliate of Sonnenblick-Goldman Corporation, a nationwide corporation engaged in arranging loan financing (hereinafter SBG). The parties negotiated and executed the contract in Pennsylvania, and stipulated that all services would take place in Pennsylvania and that Pennsylvania law would govern questions arising under the contract. Through the efforts of SBG–Pa., Monroeville obtained a permanent loan of $1,575,000 from the New York State Teachers Retirement System, a gap loan commitment of $350,000 from the North American Mortgage Investors (hereinafter NAMI), and a construction loan commitment of $1,575,000 from Western Pennsylvania National Bank (here-

1. An order ruling on a question of jurisdiction is appealable. See, Act of March 5, 1925, P.L. 23, § 1; 12 P.S. § 672. See also Rule 903(a), Pa.R.A.P.

inafter WPNB). Sidney Troy, appellant, was substantially involved in planning these commitments in his capacity as the National Mortgage Director of SBG and as an agent and employee of SBG–Pa. At various times, appellee found it necessary to secure extensions of the several loan commitments. SBG–Pa. and appellant negotiated the needed extensions.

In October, 1969, appellee requested that appellant secure an extension of the NAMI gap loan commitment. Appellee alleges that appellant orally represented to counsel for appellee that such an extension had been procured, conditioned only upon appellee's forwarding a letter of acceptance and a $7,000 check to SBG–Pa. Appellee sent the letter of acceptance and, in February, 1970, forwarded the $7,000 check to SBG–Pa. Appellee then secured a new construction loan commitment of $1,575,000 from WPNB. However, in April, 1970, prior to the WPNB loan closing, SBG–Pa. advised appellant that NAMI had not agreed to extend its gap loan commitment, and that SBG–Pa. was returning appellee's $7,000 check. Appellee could not obtain gap loan financing from other sources and, as a consequence, could not close its construction loan with WPNB by December 31, 1970. Appellee alleges that as a result, it forfeited $67,625 in non-refundable loan commitment fees and that its attempts to build the contemplated office complex were frustrated.

On May 19, 1972, appellee filed a complaint in trespass and assumpsit against SBG–Pa., NAMI and appellant. Appellee alleged two causes of action against appellant: one for fraud and deceit and one for negligence. Appellant allegedly deliberately or negligently misrepresented the status of a possible gap loan commitment by NAMI to appellee in October, 1969. On June 15, 1972, pursuant to the Pennsylvania long-arm statute,[2] appellee served notice of suit upon

2. At the time of the purported service of process on appellee, the Act of July 1, 1970, P.L. 444, No. 152, §§ 341 et seq.; 12 P.S. §§ 341 et seq., delineated the reach of the long-arm statute and the proper method of service of process. Since the institution of this suit, the long-arm statute has been twice altered. See Act of Nov. 15, 1972, P.L. 1063, No. 271, §§ 8301 et seq.; 42 Pa.C.S. §§ 8301 et seq. See

appellant at his New York office and upon the Pennsylvania Secretary of State. At that time, appellant was president of SBG–Pa. Appellant filed preliminary objections to the lower court's jurisdiction. Appellant claimed that at all times material to appellee's cause of action, he lived and conducted his business affairs in New York. On December 18, 1975, the lower court denied appellant's preliminary objections. This appeal followed.

## I

■ To decide whether appellant is subject to the *in personam* jurisdiction of Pennsylvania courts, we must answer two questions a) whether appellant's conduct was within the relevant provisions of the long-arm statute and b) whether the exercise of jurisdiction over appellant under the particular circumstances of this case complies with the constitutional mandate of due process of law. *Kitzinger v. Gimbel Bros. v. Textile Alliance, Ltd.,* 240 Pa.Super. 345, 368 A.2d 333 (filed April 22, 1976).

## A

■ In the instant case, both appellant and appellee agree that § 8305 of the long-arm statute [3] governs the question of whether the long-arm statute authorized service of process on appellant. Section 8305 provides as follows: "Any nonresident of this Commonwealth who, acting outside of this Commonwealth, individually, under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm within this Commonwealth on or

also Act of July 9, 1976, P.L. ——, No. 142, §§ 5301 et seq. However, the provisions of the Act of July 9, 1976 affecting a Pennsylvania court's *in personam* jurisdiction over non-resident individuals will not become effective until the legislature repeals § 29(4) of that act. Section 29(4) provides: "[a]ll other provisions of this act shall take effect upon the absolute repeal of this paragraph (4). This act shall expire December 31, 1978 unless this paragraph is repealed absolutely prior thereto."

3. Act of Nov. 15, 1972, supra; 42 Pa.C.S. § 8305. See also footnote 2, supra.

after August 30, 1970, shall be subject to service of process in any civil action or proceeding instituted in the courts of this Commonwealth arising out of or by reason of any such conduct. Service of process in any such civil action or proceedings shall be effected through the Department of State as provided in this chapter." Appellant contends that he cannot be served under § 8305 unless the acts underlying the cause of action were committed subsequent to August 30, 1970. He asserts that the acts of alleged fraud or negligence occurred prior to this date. Appellee responds that the date that it suffered harm is the relevant date for purposes of § 8305 and that the collapse of the project and the loss of the nonrefundable fees occurred after August 30, 1970. This question is potentially difficult, but it need not be resolved because § 8305 did not become effective until February 15, 1973. Appellee filed its complaint in this case on May 19, 1972, and effected service of process on appellee on June 15, 1972. Because "procedural matters relating to service are governed by the law existing at the time the action is commenced," § 8305 is not applicable. *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 15, 323 A.2d 11, 13 (1974). See also *Sussman v. Yaffee,* 443 Pa. 12, 275 A.2d 364 (1971); *Deere v. Zilber,* 234 Pa.Super. 273, 338 A.2d 615 (1975). Therefore, we must consider the applicability of § 8305's predecessor: 12 P.S. § 343.[4]

■ 12 P.S. § 343 provided as follows: "From and after the passage of this act, any nonresident of this Commonwealth who, acting outside of the Commonwealth, individually under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm[5] within this Commonwealth, shall be subject to service of process in any civil action or proceedings instituted in the courts of the Commonwealth of Pennsylvania, arising out of

4. Act of July 1, 1970, supra; 12 P.S. § 343.

5. The harm required by § 343 includes economic detriment as well as personal injury. See *Action Industries, Inc. v. Wiedeman,* 236 Pa.Super. 447, 346 A.2d 798 (1975). See also *Zimmermann v. Zimmermann,* 395 F.Supp. 719 (E.D.Pa.1975); *Rosen v. Solomon,* 374 F.Supp. 915 (E.D.Pa.1974).

or by reason of any such conduct; service or process in any such civil action or proceeding shall be effected through the Secretary of the Commonwealth as herein provided." Section 343 became effective on July 1, 1970. Therefore, we must determine whether service of process could be effected under this section when the allegedly tortious conduct was committed prior to the effective date of this section, but harm resulted after its effective date.

In *Sussman v. Yaffee,* supra, the Supreme Court construed a companion section to § 343. That section [6] provided, in pertinent part: "From and after the passage of this act, any nonresident of this Commonwealth who . . . shall have committed a tortious act within this Commonwealth, . . ." shall be subject to service of process under the long-arm statute. The Court rejected a contention that the section could be utilized against non-residents only for incidents arising after its effective date. The words "who shall have committed" signified the legislative intent to allow service of process pursuant to the long-arm statute in cases arising from tortious conduct before the effective date. Furthermore, the Court stated, "it is well established that when the General Assembly enacts legislation such as Act No. 152 providing for service of process on nonresidents, it is deemed to have created a procedural right to be given full effect as of the time an action is instituted." 443 Pa. at 15, 275 A.2d at 366. See also *Kilian v. Allegheny County Distributors,* 409 Pa. 344, 185 A.2d 517 (1962).

*Sussman* offers persuasive guidance in our task of interpreting § 343. The Legislature's selection of the phrase "shall have caused any harm" connotes a desire to allow service of process in cases involving allegedly tortious conduct before July 1, 1970. If the Legislature had intended to say "who shall cause harm", with its obvious import, then that is what they would have said. *Sussman v. Yaffee,* 443 Pa. at 15, 275 A.2d at 366. Our reading of § 343 is buttressed by the presumption, articulated in *Sussman,* that legislation concerning service of process is to be given full

6. Act of July 1, 1970, supra; 12 P.S. § 341.

effect as of the time an action is instituted. Moreover, to reject our interpretation of § 343 would be to accuse the Legislature of desiring inconsistent results in two closely related sections authorizing service of process over non-residents who commit tortious acts. Therefore, we hold that § 343 of the 1970 long-arm statute authorized service of process upon appellant in this case.[7]

## B

■ We must now determine if the exercise of *in personam* jurisdiction over appellant under the particular circumstances of this case offends due process. In *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the Supreme Court expounded the classic formulation of a state's power to exercise *in personam* jurisdiction over a non-resident defendant, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Our Court has noted that the rule of *International Shoe* does not lend itself

7. A Federal District Court has indicated agreement with our construction of § 343. *Zimmermann v. Zimmermann,* 395 F.Supp. 179 (E.D.Pa.1975). In *Zimmermann,* plaintiff wife and defendant husband, Pennsylvania residents, entered into two 1965 contracts for the maintenance, support and education of their children and plaintiff. In 1974, plaintiff sued defendant, who had moved to Florida, for sums owing under these contracts. The district court construed 42 Pa.C.S. § 8305, supra, as only permitting service of process when the acts in question as well as the harm occurred after August 30, 1970. In reaching this conclusion, the court contrasted § 8305 with its predecessor § 343, and determined that the legislature had inserted the time limitation into § 8305 in order to eliminate the practice under § 343 of allowing service of process in cases in which the conduct in question occurred prior to the specified date, but the resulting harm continued into the covered period. We approve the district court's interpretation of § 343, but refrain from deciding the proper interpretation of § 8305. We do note that in *Zimmermann,* the breach of contractual obligations and the harm giving rise to the cause of action occurred simultaneously when the husband failed to make the support payments. *Zimmermann* did not directly confront the situation, present in the case at bar, in which there is a temporal lag between a breach of duty and the resulting harm.

to mechanical application; a determination of whether a defendant has the "minimum contacts" with a state necessary to make him constitutionally amenable to process in that state can only be made on an *ad hoc* case-by-case basis. *Action Industries, Inc. v. Wiedeman,* 236 Pa.Super. 447, 346 A.2d 798 (1975); *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* supra. We have, however, established certain guidelines which aid "in the factual analysis necessary to make the determination of whether the requisite 'minimum contacts' are present in a given case. First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir. 1968); *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550 (D.Conn.1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington,* supra; see *Southern Mach. Co. v. Mohasco Indus., Inc.,* supra; *see also In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir. 1972); *Kourkene v. American BBR, Inc.,* 313 F.2d 769 (9th Cir. 1963)." *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* supra, 228 Pa.Super. at 19, 323 A.2d at 15. While *Proctor* applied these guidelines to a foreign corporation, we have also recognized their usefulness in a similar determination of the amenability of a non-resident individual to Pennsylvania service of process. See *Action Industries, Inc. v. Wiedeman,* supra.[8]

8. In *Action Industries,* we cautioned that cases involving foreign corporations should be applied cautiously to cases involving individual defendants. We based this admonition on *Stepnowski v. Avery,* 234 Pa.Super. 492, 340 A.2d 465 (1975). However, in *Stepnowski,* the court noted that "the emphasis of the [long-arm] statute is upon doing something in Pennsylvania for the purpose of making a profit" and approved "the continual expansion of long-arm jurisdiction to 'contacts which have their roots in the market place' [footnote omitted] as opposed to those acts done within the state which are not

■ We believe that the above guidelines are all satisfied by the facts of this case. First, appellant, as an agent and employee of a Pennsylvania corporation, SBG–Pa., engaged in a course of conduct negotiating loan commitments and extensions designed to enable another Pennsylvania corporation to build a multimillion dollar office complex. Appellant performed his services pursuant to a contract between the two Pennsylvania corporations which was negotiated and executed in Pennsylvania and which stipulated that all services were to be rendered in Pennsylvania and that Pennsylvania law would govern any disputes arising under the contract. Appellant's activities and alleged misrepresentations had a direct and reasonably foreseeable economic impact on the commerce of this Commonwealth. Therefore, appellant purposefully availed himself of the privilege of acting within Pennsylvania. See *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* supra, 228 Pa.Super. at 19–20, 323 A.2d at 15–16. See also *Parise v. AAA Warehouse Corp.,* 384 F.Supp. 1075 (W.D.Pa.1974); *Southeast Guaranty Trust Co., Ltd. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001 (N.D.Ill.1973); *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.,* 358 F.Supp. 441 (E.D.Pa.1973). Moreover, as an employee of SBG–Pa. at the time of the allegedly tortious conduct and as president of SBG–Pa. at the time of service of process, appellant accepted the benefit and protection of Pennsylvania laws.

Second, we believe that the cause of action asserted by appellee arises from appellant's alleged activities within the forum state. In *Action Industries, Inc. v. Wiedeman,* supra, a Pennsylvania corporation sued a non-resident individual for breach of employment duties and conversion. Defendant was president of an Ohio factory as well as an employee of the Pennsylvania corporation. As part of his duties, he made periodic telephone reports on the quantity of materials on hand in the Ohio plant. Plaintiff charged defendant with

actuated by a profit motive." 234 Pa.Super. at 496–97, 340 A.2d at 468. In our case, while appellant is being personally sued, his activities were clearly rooted in the market-place and designed to enhance the corporate coffers.

converting the goods to his own use and then telephoning false reports to Pennsylvania headquarters in order to cover up his activities. Our Court noted that although defendant's activities occurred in Ohio, "they also occurred in Pennsylvania, for his allegedly false telephone reports were received here, and the economic harm suffered as a result of his alleged conversion was suffered here." 236 Pa.Super. at 456, 346 A.2d at 803. Appellant's alleged misrepresentations were likewise received in Pennsylvania and likewise ostensibly caused substantial economic harm here.

Finally, the exercise of jurisdiction in this case is manifestly reasonable. Again, *Action Industries, Inc. v. Wiedeman* offers strong support for our conclusion. "The Commonwealth unquestionably has an interest in resolving a suit brought to safeguard the rights and property of one of its residents, including a corporate-resident. *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, supra; *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, . . .. Appellant was not a minor employee of appellee but a business man and president of Plasta-Craft. His contacts with Pennsylvania originated in a commercial setting; and his assumption of his employment duties was actuated by a profit motive. 'The emphasis of the [long-arm] statute is upon doing something in Pennsylvania for the purpose of making a profit.' *McAndrew v. Burnett*, 374 F.Supp. 460, 462 (M.D.Pa.1974). *Accord: Stepnowski v. Avery*, supra. Appellant's performance in reporting to appellee was unsupervised by any other employee of appellee, so that appellee's reliance on appellant was complete. Appellant must have anticipated that a failure to make accurate reports would have substantial consequences in Pennsylvania. 'It is not unreasonable . . . to expect foreign businessmen who involve themselves, to [a significant] degree . . . in commercial transactions with citizens of their state to accept the corresponding burden of accepting service and defending themselves in a court of that state.' *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, supra at 445. Moreover, nowhere in the

record does it appear that it would be physically or financially awkward for appellant to defend himself in this state. 'Mere inconvenience to the defendant is not sufficient to deny plaintiff the forum of his choice.' *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* supra at 16. And see *Rosen v. Solomon,* 374 F.Supp. 915 (E.D.Pa.1974), and *Zimmermann v. Zimmermann,* supra, where individual defendants from far greater distances than Ohio—California and Florida, respectively—were required to defend in Pennsylvania." 236 Pa. Super. at 456–57, 346 A.2d at 803.

In the instant case, the Commonwealth has a similar interest in safeguarding appellee's property and rights. Appellant was certainly not an inconsequential employee; he was an active negotiator on behalf of a Pennsylvania corporation and National Mortgage Director for Sonnenblick-Goldman Corporation. At the time of the attempted service of process, he was president of SBG–Pa. Appellant's contacts with Pennsylvania originated in a commercial setting and were profit-motivated. Appellant must have anticipated that his alleged misrepresentations could have a deleterious impact within the boundaries of our Commonwealth.[9] Finally, appellant does not argue that it would be financially or physically inconvenient for him to travel from New York to defend himself. On balance, it is reasonable to allow Pennsylvania courts to assert *in personam* jurisdiction over appellant under the circumstances of this case. Because the service of process upon appellant comported with both the Pennsylvania long-arm statute and the dictates of due process, we affirm the order of the lower court.

Order affirmed.

**9.** Professors Wright and Miller, in Wright and Miller, *Federal Practice and Procedure,* § 1069 at 264–65 (1969), emphasize the importance of this consideration in determining the limits that the federal Due Process Clause imposes on *in personam* jurisdiction. They argue that "even an act done outside the state that has consequences within the state should suffice as a basis for jurisdiction in a suit arising from those consequences if the effect would reasonably have been expected to follow from defendant's conduct." See also *Calagaz v. Calhoon,* 309 F.2d 248 (5th Cir. 1962); *Davis v. St. Paul-Mercury Indemnity Co.,* 294 F.2d 641 (4th Cir. 1961).