435 A.2d 585

KINGSLEY AND KEITH (CANADA) LIMITED and Kingsley and Keith Chemical Corporation.

v.

MERCER INTERNATIONAL CORPORATION and Interstate Chemical Corporation and H. M. Trimble & Sons, Limited.

**Appeal of H. M. TRIMBLE & SONS, LIMITED.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed June 26, 1981.

Reargument Denied Oct. 9, 1981.

Petition for Allowance of Appeal Granted Dec. 22, 1981.

98

P. Raymond Bartholomew, Sharon, for appellant.

Thomas T. Frampton, Greenville, for Kingsley et al., appellees.

Milford L. McBride, Jr., Grove City, for Mercer et al., appellees.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

This case, one of a trilogy of long-arm jurisdiction cases,[1] is an appeal from an order granting a petition by Kingsley and Keith (Canada), Limited, and Kingsley and Keith Chemical Corporation for leave to serve an amended complaint in assumpsit on H.M. Trimble and Sons, Limited, by registered mail to Trimble's headquarters in Canada.[2]

–1–

For the purposes of our inquiry, we shall accept as true the well-pleaded facts in the amended complaint. *Cf. Frisch v. Alexson Equip. Corp.*, 423 Pa. 247, 224 A.2d 183 (1966).[3] So regarded, the amended complaint may be summarized as follows.

In 1974, one Canadian corporation, Celanese (Canada), Limited, ordered approximately 80,000 lbs. of methylene chloride from another Canadian corporation, Kingsley and Keith (Canada), Limited. Kingsley and Keith (Canada) ordered the methylene chloride from Kingsley and Keith Chemical Corporation, a New Jersey corporation, which in

1. The other cases are *The Union National Bank of Pittsburgh v. L.D. Pankey Institute*, 284 Pa.Super. 537, 426 A.2d 624 (1980), and *Goff v. Armbrecht Motor Truck Sales, Inc.*, 284 Pa.Super. 544, 426 A.2d 628 (1980). Originally all three cases were decided and filed together, but upon application in this case, we granted reconsideration.

2. The authority for this service may be found in Pa.R.Civ.P., R. 2180(c), which provides:
   If service cannot be made under any of the methods set forth in subdivision (a) or (b) of this rule, the court upon petition shall authorize service by registered mail directed to the Secretary of the Commonwealth and to the corporation or similar entity at its last registered address or principal place of business, or by publication as the court may direct.

3. In other words, Trimble's argument that the petition for leave to serve it should not have been granted is functionally equivalent to a defendant's argument that its preliminary objections to the complaint should be sustained. In both cases the assertion is that the complaint itself discloses that the action may not be maintained. A party making this assertion must take the complaint at face value. In this regard, it may be noted that the original complaint named Trimac Limited, as a defendant Trimac Limited is Trimble's parent company. When it filed preliminary objections, as amended complaint was filed, naming Trimble instead of Trimac Limited as a defendant.

turn ordered two tanks of methylene chloride (approximately 40,000 lbs. each) from Mercer International Corporation, a Pennsylvania corporation. Kingsley and Keith (Canada) then arranged with H.M. Trimble and Sons, Limited, a Canadian corporation, to have the tanks transported to Canada. In October 1974, Interstate Chemical Corporation, a Pennsylvania corporation and an affiliate of Mercer International Corporation, sent one tank truck of the methylene chloride to Indianapolis, for transferral there to a Trimble tank truck. In November 1974, Interstate sent another tank truck of the methylene chloride to Mercer, Mercer County, Pennsylvania, for transferral there to a Trimble tank truck. Trimble delivered both tank loads to Celanese (Canada), but Celanese rejected them because the methylene chloride was contaminated. Kingsley and Keith (Canada) and Kingsley and Keith (New Jersey) thereupon brought the present action in Mercer County against Mercer International, Interstate, and Trimble. Generally stated, the allegation is that Mercer International, Interstate, and Trimble were obliged to deliver good methylene chloride to the two Kingsley and Keiths, so that the two Kingsley and Keiths could deliver it to Celanese, but instead, delivered contaminated methylene chloride.

While all this seems complicated, it really is not. Plainly, both Mercer International and Interstate, as Pennsylvania corporations, may be sued in Pennsylvania, and no one contends otherwise; the issue is whether Trimble, a Canadian corporation, may be. This issue may be stated as follows: When a Canadian common carrier (Trimble) contracts with another Canadian corporation (Kingsley and Keith (Canada) to pick up one load of methylene chloride in Indiana and another load in Pennsylvania, and delivers both loads in Canada to a third Canadian corporation, does it acquire sufficient minimum contacts with Pennsylvania to render it amenable to suit in Pennsylvania in an action in which breach of the contract of carriage is alleged and in which the Pennsylvania sellers of both loads of methylene chloride are also defendants?

Answers to interrogatories revealed the following. Trimble did not receive a bill of lading from Mercer International, although it should have been the delivery carrier designated on the bill of lading. Trimble did not have authority either from the Pennsylvania Public Utility Commission or the Interstate Commerce Commission to pick up or deliver goods in Pennsylvania; the authority under which the methylene chloride was picked up in Pennsylvania was a "triplease" between Coastal Tanklines Limited and Trimble. Prior to the transactions involved here, Mercer International and Interstate had not requested or paid for Trimble's services, nor had they had any business relationship with Trimble.

–2–

■ Before a court in this state may exercise jurisdiction over Trimble, it must appear that Trimble's conduct was within the provisions of this state's long-arm statute, and that application of the statute to Trimble would not violate the due process clause of the Fourteenth Amendment of the United States Constitution. *Monroeville Land Co., Inc. v. Sonnenblick-Goldman Corp. of Western Pa.*, 247 Pa.Super. 61, 371 A.2d 1326 (1977); *Action Industries, Inc. v. Wiedeman*, 236 Pa.Super. 447, 346 A.2d 798 (1975). The long-arm statute in effect at the time this action was instituted[4] provided in pertinent part:

Any foreign corporation which shall have done any business in this Commonwealth without procuring a certificate of authority to do so from the Department of State as required by statute, shall be conclusively presumed to

---

4. Act of Nov. 15, 1972, P.L. 1063, No. 271, 42 Pa.C.S.A. §§ 8301–8309 (Purdon's Supp.1976), *repealed by,* Act of July 9, 1976, P.L. 586, No. 142, § 1, effective June 27, 1978, 42 Pa.C.S.A. §§ 5301–5329 (Purdon's 1979 Pamphlet). The complaint in this case was filed on April 26, 1978, prior to the effective date of the repeal of the Act of Nov. 15, 1972, P.L. 1063, No. 271. It is clear that

[w]hile substantive rights are settled as of the time the cause arises, rights in procedural matters, such as jurisdiction and service of process, are determined by the law in force at the time of the institution of the action.

*Kilian v. Allegheny County Distributors,* 409 Pa. 344, 350, 351, 185 A.2d 517, 520 (1962).

have designated the Department of State as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising within this Commonwealth. Service of process shall be made in the manner provided by section 8307 of this title (relating to procedure for service of process).

\* \* \* \* \* \*

(a) General rule.—Any of the following shall constitute "doing business" for the purposes of this chapter:

(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.

(5) The ownership, use or possession of any real property situate within this Commonwealth.

(b) Exercise of full constitutional power over foreign corporations.—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States. Act of Nov. 15, 1972, P.L. 1063, No. 271, 42 Pa.C.S.A. §§ 8302(a), 8309 (Purdon's Supp.1976).

Since the statute makes this state's jurisdiction over a foreign corporation co-extensive with the permissible limits of jurisdiction under the due process clause of the federal constitution, a determination of the constitutional issue will

be dispositive. *Hart v. McCollum*, 249 Pa.Super. 267, 271–72, 376 A.2d 644, 647 (1977).

The United States Supreme Court has stated that for a state to have jurisdiction over an out-of-state defendant, there must be "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the Court stated that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." In *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court described the concept of "minimum contacts" as "protect[ing] the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.* at 292, 100 S.Ct. at 564. The Court also commented on the concept of "reasonableness" or "fairness" embodied in the requirement that a state's jurisdiction "[must] not offend 'traditional notions of fair play and substantial justice,'" stating:

> Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, *see McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 [78 S.Ct. 199, 201, 2 L.Ed.2d 223] (1957); the plaintiff's interest in obtaining convenient and effective relief, *see Kulko v. Superior Court*, [436 U.S. 84, 92 [98 S.Ct. 1690, 1697, 56 L.Ed.2d 132] (1978)], at least when that interest is not adequately protected by plaintiff's power to choose the forum, *cf. Shaffer v. Heitner*, 433 U.S. 186, 211 n. 37 [97

S.Ct. 2569, 2583, n. 37, 53 L.Ed.2d 683] (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies, *see Kulko v. Superior Court, supra,* at 93, 98 [98 S.Ct., at 1697, 1700].

*Id.*

Finally, the Court stated:

When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson v. Denckla, supra* at 253 [78 S.Ct., at 1239–1240], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State.

*Id.* at 297, 100 S.Ct. at 567.

■ On the basis of decisions by the United States Supreme Court, this court, in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974), has formulated a three-part test: [5]

First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla, supra.* Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir. 1968); *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550 (D. Conn. 1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of

5. This test was formulated prior to four recent United States Supreme Court decisions: *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *World-Wide Volkswagen Corporation v. Woodson, supra; Kulko v. Superior Court, supra;* and *Shaffer v. Heitner, supra.* However, since the Court's comments in *World-Wide Volkswagen* suggest that the Court's earlier decisions retain their validity, it is unnecessary to reformulate the test.

jurisdiction over it reasonable. *International Shoe Co. v. Washington, supra: see Southern Mach. Co. v. Mohasco Indus., Inc., supra* [401 F.2d 374 (6th Cir. 1968)]; *see also In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir. 1972); *Kourkene v. American BBR, Inc.,* 313 F.2d 769 (9th Cir. 1963).

*And see Bev-Mark, Inc., d/b/a Tuboy Trucking Company, et al. v. Summerfield GMC Truck Co., Inc., et al.,* 268 Pa.Super. 74, 407 A.2d 443 (1979).

–3–

–a–

■ There can be no question but that the first part of the *Proctor & Schwartz* test has been met. Trimble entered into a contract that contemplated Trimble's performance in Pennsylvania, and pursuant to that contract Trimble entered Pennsylvania. In *Koenig v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO,* 284 Pa.Super. 558, 426 A.2d 635 (1980), we extensively discussed the circumstances in which a non-resident defendant "purposefully avail[s] itself of the privilege of acting within [Pennsylvania]" when it enters into a contract. We held that a critical factor is the contemplation of the parties concerning the place of performance of the contract. Here, it was contemplated that Trimble would enter Pennsylvania to pick up one of the loads of methylene chloride from a Pennsylvania seller. Trimble could not have fulfilled its contract without entering Pennsylvania; it did not, for example, merely pass through Pennsylvania because it chose one route rather than another.

–b–

The question whether the second part of the *Proctor & Schwartz* test has been met requires more discussion. Appellee has not claimed that the contamination of the methy-

lene chloride took place in Pennsylvania but only that it might have taken place here.

–i–

We begin our analysis by recognizing that this is an assumpsit action, as was *Proctor & Schwartz.*[6]  In *Proctor & Schwartz* we said:

> The second analytical step requires only that the cause of action arise from the defendant's activities within the forum state.  The mere fact that the defendant availed itself of the privilege of doing business in Pennsylvania will not support a cause of action which is unrelated to the defendant's activities in this state.  We find in the instant case that the plaintiff's cause of action arose directly from the defendant's acts within this state.  The activity which satisfies the "purposefully availed" test above is the entering into contractual obligations.  The cause of action arises from the breach of those same obligations.

228 Pa.Super. at 20, 323 A.2d at 15.

The Michigan Court of Appeals has held that "[i]t is sufficient for purposes of due process that the suit be based on a contract which had a substantial connection with the state of the forum.  A single transaction may be sufficient to meet the 'minimum contacts' test." *Shepler v. Korkut,* 33 Mich.App. 411, 415, 190 N.W.2d 281, 283 (1971).  *See also, Central Insurance Agency Co., Inc. v. Financial Credit Corp.,* 222 F.Supp. 627 (D.D.C. 1963).

In contrast, in actions in trespass the courts have focused on where the injury took place.  Thus in the leading Pennsylvania case of *Bork v. Mills,* 458 Pa. 228, 329 A.2d 247

---

**6.** In our original opinion in this case we did not give proper recognition to this aspect of the case.  We held that to meet the second part of the *Proctor & Schwartz* test it was necessary that some connection between Trimble's activities in Pennsylvania and the contamination of the methylene chloride must be averred before longarm jurisdiction could be asserted over Trimble.  For the reasons explained in the text, *infra,* we have concluded that this was not the proper way of stating the second part of the *Proctor & Schwartz* test in an action for breach of a contract.

(1974), our Supreme Court held that although a Maryland defendant had done business in Pennsylvania, the business was not so continuous or substantial as to make him subject to suit in Pennsylvania in connection with an automobile accident that had occurred in Virginia. There was no claim in *Bork* that the plaintiff or the accident had any connection with the defendant's business activities in Pennsylvania. *See also, Whalen v. Walt Disney World Co.,* 274 Pa.Super. 246, 418 A.2d 389 (1980); *Lubkuecher v. Loquasto,* 255 Pa.Super. 608, 389 A.2d 143 (1978); *Garfield v. Homowack Lodge, Inc.,* 249 Pa.Super. 392, 378 A.2d 351 (1977).

–ii–

One of the cases relied on by the lower court in this case is *Dornbos v. Kroger Company,* 9 Mich.App. 515, 157 N.W.2d 498 (1968), *appeal dismissed sub nom. Adkins Transfer Company, Inc. v. Dornbos,* 393 U.S. 322, 89 S.Ct. 555, 21 L.Ed.2d 516 (1969).[7] In *Dornbos* the Michigan Court of Appeals sustained long-arm jurisdiction over an out-of-state common carrier that had transported a load of fish from Chicago to Tennessee. The fish had been sold by the Michigan plaintiff to a buyer in Tennessee and had been transported from Michigan to Chicago by a Michigan carrier that did not contest jurisdiction. In affirming, the Court of Appeals adopted much of the lower court's opinion, including the following:

> These defendants are in the business of carrying goods in interstate commerce. It is reasonable to assume that they solicit and hopefully anticipate such business. They are in the position of being able to protect themselves from the consequences of their own derelictions. They understand that the nature of their business requires them to have the care and custody of the products and possessions of residents of other states.

**7.** Although the plaintiff in *Dornbos* alleged negligence by the defendants, and to that extent at least the case sounded in tort, the court's analysis of the propriety of the exercise of long-arm jurisdiction focused on the contractual relationships among the parties.

9 Mich.App. at 520, 157 N.W.2d at 501.

In *Dornbos* it was certain that any contamination for which the out-of-state carrier might be found responsible could not have taken place in Michigan because the carrier did not receive the fish until it picked up the fish in Chicago.

Appellant tries to distinguish *Dornbos* as well as *Shepler v. Korkut, supra,* by arguing that in those cases the forum state recognized that it was providing a means of redress for its residents. Language to the same effect may be found in Pennsylvania cases. *E. g., Action Industries, Inc. v. Wiedeman, supra.* However, this court has explicitly held that the fact that a party seeking to assert jurisdiction over a nonresident corporation is itself a nonresident does not affect the scope of our jurisdiction. *Washington v. U.S. Suzuki Motor Corp.,* 257 Pa.Super. 482, 390 A.2d 1339 (1978).

■ As we read it, the second part of the *Proctor & Schwartz* test may be satisfied by pleading a contract having a significant connection with Pennsylvania, *see Koenig v. International Brotherhood of Boilermakers, supra,* and a breach of that contract. We recognize that it may be argued that this is too broad a reading. However, we believe the proper approach, once a contract that has a significant connection with Pennsylvania and its breach have been pleaded, is to move on to the third part of the test. This approach not only gives effect of the language of *Proctor & Schwartz* describing the second part of the test but also is consistent with our statement there that the third part of the test is actually the most significant. 228 Pa.Super. at 20, 323 A.2d at 16.

—c—

■ The focus of the third part of the *Proctor & Schwartz* test is on whether "the exercise of jurisdiction in this particular case [would] be fair and reasonable under the circumstances." *Id.,* 228 Pa.Super. at 20, 323 A.2d at 16. As

previously noted, the determination of whether an exercise of jurisdiction is reasonable depends on the burden that would be imposed on the defendant, in light of several factors, including the forum state's interest in resolving the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in the most efficient resolution of the controversy; and the interest of the several states in furthering substantive social policies. *World-Wide Volkswagen Corporation v. Woodson, supra* at 292, 100 S.Ct. at 564. Here Trimble will be inconvenienced by having to defend in this state, but this is not enough to counterbalance the factors favoring jurisdiction. *See, e. g., Action Indust., Inc. v. Wiedeman, supra.* This state has an interest in ensuring that contracts affecting its domiciliaries, Mercer International and Interstate, were not breached, and in safeguarding the transport of chemicals over its highways. Also, since all the other defendants are here, the entire case could be resolved in one trial.

It is easy to imagine a case in which the breach of a contract that had a significant connection with Pennsylvania would be sufficient to meet the first two parts of the *Proctor & Schwartz* test but not the third. This case, for example, would be quite different if Trimble were the only defendant. Thus it illustrates the importance of all three parts of the *Proctor & Schwartz* test in determining whether the exercise of long-arm jurisdiction is consistent with the requirements of fairness and due process as interpreted through the years by the United States Supreme Court in the line of cases represented most recently by *World-Wide Volkswagen Corporation v. Woodson, supra,* and *Rush v. Savchuk, supra.*

Affirmed.