452 A.2d 865

**Mary NISSLEY, Administratrix of the Estate of Russel K. Nissley, deceased, and Mary Nissley, Individually**

**v.**

**JLG INDUSTRIES, INC. and H.J. Williams Co., Inc., and Helgesteel Corporation.**

**Appeal of HELGESTEEL CORPORATION.**

Superior Court of Pennsylvania.

Argued May 10, 1982.

Filed Nov. 19, 1982.

558

Joel David Smith, Lancaster, for appellant.

David C. Keiter, York, for Nissley, appellees.

Christopher S. Underhill, Lancaster, for JLG, appellee.

Before CAVANAUGH, CIRILLO and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in finding it subject to jurisdiction pursuant to Pennsylvania's Long-Arm

Statute, 42 Pa.C.S.A. §§ 5322(a)(4)[1] and (b)[2]. Because we find appellant's contacts with Pennsylvania insufficient to establish jurisdiction, we reverse the lower court.

On March 2, 1976, decedent was crushed to death between the basket of a man-lift (cherry picker) he was operating and a steel beam. On August 18, 1977, Mary Nissley, decedent's widow, filed suit against JLG Industries, Inc. (JLG), manufacturer of the man-lift. On March 4, 1980, the lower court granted JLG's petition to join both previous owners of the man-lift, H.J. Williams Co., and appellant, Helgesteel Corporation, as additional defendants. Appellant, a Wisconsin corporation, challenged the complaint alleging lack of personal jurisdiction. The lower court, on December 31, 1980, found appellant subject to Pennsylvania's jurisdiction and pursuant to Pa.R.App.P. 311(b), certified that the question of personal jurisdiction presented a substantial issue of jurisdiction, thus permitting this appeal.

 The assertion of personal jurisdiction over a nonresident must fall within the terms of the state long-arm statute and must meet the constitutional standards of due process. *Monroeville Land Co., Inc. v. Sonnenblick-Goldman Corp. of Western Pennsylvania*, 247 Pa.Superior Ct. 61, 371 A.2d 1326 (1977); *Action Industries, Inc. v. Wiedeman*, 236 Pa.Superior Ct. 447, 346 A.2d 798 (1975). Because the reach

1. 42 Pa.C.S.A. § 5322(a)(4) is as follows:
 (a) *General Rule —*
 A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under the subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:
 (4) Causing harm or tortious injury by an act or omission in this Commonwealth.

2. 42 Pa.C.S.A. § 5322(b) is as follows:
 (b) *Exercise of full constitutional power over nonresidents —*
 In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

of the Pennsylvania Long-Arm Statute is "co-extensive with requirements of due process under the Fourteenth amendment to the United States Constitution," our controlling consideration here is "whether appellant had sufficient minimum contacts with this forum to make the exercise of jurisdiction permissible." *Bev-Mark, Inc. v. Summerfield GMC Truck Co.*, 268 Pa.Superior Ct. 74, 78, 407 A.2d 443, 445 (1979). Due process requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

> Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. . . [I]t has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there.

*Id.* at 317, 66 S.Ct. at 158–59. "It is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1957). Accordingly, "an essential criterion in all cases is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that state." *Kulko v. California Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1957). This court arrived at a three-part test integrating these due process considerations:

> First, the defendant must have purposely availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. Secondly, the

cause of action must arise from defendant's activities within the forum state. Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable.

*Proctor & Schwartz v. Cleveland Lumber Co.,* 228 Pa.Superior Ct. 12, 19, 323 A.2d 11, 15 (1974), allocatur refused. (citations omitted); *Kingsley and Keith (Canada) Ltd. v. Mercer International Corp.,* 291 Pa.Superior Ct. 96, 435 A.2d 585 (1981). The Supreme Court recently refined the "due process" requirement in *World Wide Volkswagen v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980), where a New York car dealer and a New York, New Jersey, Connecticut area regional distributor were not required to defend a products' liability action in Oklahoma brought by plaintiffs who had purchased a car in New York and subsequently moved to Oklahoma. The Court noted that, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567. The Court stated a need for "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297, 100 S.Ct. at 567. *See generally Kenny v. Alexson Equipment Co.,* 495 Pa. 107, 432 A.2d 974 (1981).

Appellant, a Wisconsin corporation engaged in construction work, purchased the man-lift from a distributor in Wisconsin and used the equipment in building projects for approximately two years. After deciding to liquidate some of its excess construction equipment, on a one-time basis, appellant consigned several items to Forke Brothers Auctioneers, located in Lincoln, Nebraska. Forke Brothers advertised the auction throughout the United States and in foreign countries. Appellant had no power to approve bids,

withdraw any items from sale, control terms of any sale, or become involved in the auction. (N.T. August 1, 1980, at 72a–83a). H.J. Williams Co., of Pennsylvania, bought the man-lift at the Wisconsin auction and shipped it to Pennsylvania via New York. Williams delivered the man-lift to its subsidiary, L.S. Lee & Sons, which in turn, lent it to H.R. Miller Co., decedent's employer. Appellant's sole contact with Pennsylvania was its use of a Nebraska auctioneer that advertised outside of Wisconsin and eventually sold to a Pennsylvania corporation.

■ We are satisfied that these contacts fall far short of the constitutionally mandated "minimum contacts" necessary to assert personal jurisdiction. First, we do not find that appellant has "purposely availed itself of the privilege" of acting within Pennsylvania, *Proctor & Schwartz, supra,* through its agent's Forke Brothers, advertising here. While it is true that an auctioneer is considered an agent, *Gardiner v. D.P.S. Nichols,* 48 Pa.Superior Ct. 510 (1912); *U.S. v. Somerville,* 211 F.Supp. 843 (W.D.Pa.1962), aff'd 324 F.2d 712 (3d Cir.1963), it does not necessarily follow that the jurisdictional contacts made by the agent can be imputed back to the principal. Appellees' contention that the consequence of this relationship is sufficient, standing alone, to satisfy the "minimum contacts" requirement is not tenable. In *Russ v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), Minnesota failed in its attempt to assert quasi in rem jurisdiction over an Indiana resident based on the defendant's insurance company's selling insurance in Minnesota. The Supreme Court held that:

the fact that the defendant's insurer does business in the forum State suggests no further contacts between the defendant and the forum, and the record supplies no evidence of any. State Farm's decision to do business in Minnesota was completely adventitious as far as [defendant] was concerned. He had no control over that decision, and it is unlikely that he would have expected that by buying insurance in Indiana he had subjected himself to any suit in any State in which a potential future plaintiff

might decide to move. In short, it cannot be said that the defendant engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable.

*Id.* at 328–29, 100 S.Ct. at 577. Similarly, it would be unreasonable and unfair to expect appellant to defend against a suit in any state or country in which Forke Brothers advertised the auction. Moreover, appellant's president testified at his deposition that he never questioned Forke Brothers about their advertising and did not find out until after the auction that buyers had come from out-of-state. Appellant had no control over the auction or the ultimate destination of the equipment.[3] The present case differs significantly from *Koenig v. International Brotherhood of Boilermakers,* 284 Pa.Superior Ct. 558, 426 A.2d 635 (1980), where jurisdiction was asserted over appellants' New York employer because performance of the contract involved was not only foreseeable in Pennsylvania, but the employer "presumably directed appellants to perform here." *Id.,* 284 Pa.Superior Ct. at 572, 426 A.2d at 642. The court added that "[the employer's] involvement with Pennsylvania was therefore more deliberate than that of a non-resident defendant that merely foresaw that the plaintiff might perform in Pennsylvania but did not direct such performance." *Id.* See *Goff v. Armbrecht Motor Truck Sales, Inc., supra.*

3. Appellees' reliance on cases involving indirect shipments of goods through middlemen is misplaced because those cases generally involve, "the manufacture of products presumably sold in contemplation of use [in the forum] ..." such that "it should not matter that the purchase was made from an independent middleman or that someone other than defendant shipped the product into the state." *Goff v. Armbrecht Motor Truck Sales, Inc.,* 284 Pa.Superior Ct. 544, 554, 426 A.2d 628, 633 (1980), *quoting Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). The auction here was an isolated event, not promoting a constant stream of products from Wisconsin to Pennsylvania. Furthermore, unlike the relationship between a manufacturer and a middleman distributor, when both parties are in the business of distributing products to all available markets, appellant desired only to rid itself of excess equipment, which it did not normally sell, and consigned it to a mid-western auction house that invited potential buyers for its own purposes.

Here, we cannot say that appellant even "foresaw" any consequences of its action, the consignment, in Pennsylvania.

■ In *Bev-Mark, Inc. v. Summerfield GMC Truck Co.,* *supra,* an Indiana car repair shop on Interstate Route 80 was not held within Pennsylvania long-arm jurisdiction because the defendant did not solicit Pennsylvania customers, a miniscule percentage of defendant's customers had Pennsylvania license plates, no merchandise was shipped, and defendant "could not have reasonably foreseen that the transaction would have consequences" in Pennsylvania. Supra 268 Pa.Super. at 79, 407 A.2d at 446. Similarly, in *Jacobs v. Lakewood Aircraft Service,* 493 F.Supp. 46 (E.D.Pa.1980), a New Jersey corporation that repaired aircraft advertised one time in a Pennsylvania flyer for the Reading Air Show, repaired a plane that defendant knew was headed for Pennsylvania and was then sued for negligent repair after an accident in Pennsylvania. The court held that Pennsylvania lacked jurisdiction because "the transportation of the airplane to Pennsylvania was, so far as defendant is concerned, completely fortuitous. It made no difference to defendant whether it went to Maryland or Connecticut or even remained in New Jersey. Defendant's connection with the aircraft was entirely in New Jersey." *Id.* at 48. *But see* *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 496 (5th Cir.1974) ("defendant's contacts with the forum were deliberate rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's law was reasonably foreseeable, if not forseen, rather than a surprise.") Here, it was clearly fortuitous that the man-lift was sold to a Pennsylvania company. It could just as easily have been sold to a Wisconsin, mid-western or foreign company. Because appellant could not have reasonably foreseen consequences in Pennsylvania, we find that appellant has not purposely availed itself of the benefits and protections of Pennsylvania law.

Secondly, the cause of action did not arise from appellant's activity within Pennsylvania. Any modification of the man-lift performed by appellant occurred in Wisconsin and not as

a result of any contacts appellant maintained with Pennsylvania. *See Union National Bank of Pittsburgh v. L.D. Pankey,* 284 Pa.Superior Ct. 537, 426 A.2d 624 (1980) (jurisdiction improper where appellees took no action in Pennsylvania that in any way resulted in appellant's decedent's death in Florida) *but see Hart v. McCollum,* 249 Pa.Superior Ct. 267, 376 A.2d 644 (1977) (jurisdiction proper where New Jersey bar consistently advertised in Philadelphia papers such that "in a meaningful manner, appellant's cause of action arose from defendant's activity in this forum. Moreover, the ads contemplated inducing patrons to drive to and from New Jersey to use the lounge. That is, the ads induced the very act which led to the accident." *Id.,* 249 Pa.Superior Ct. at 274, 376 A.2d at 648.)

Finally, we find the exercise of jurisdiction over appellant unreasonable.

[T]he determination of whether an exercise of jurisdiction is reasonable depends on the burden that would be imposed on the defendant, in light of several factors, including the forum state's interest in resolving the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in the most efficient resolution of the controversy; and the interest of the several states in furthering substantive social policies.

*Kingsley & Keith (Canada) Ltd., supra* 291 Pa.Super. at 109, 435 A.2d at 591, *quoting World-Wide Volkswagen Corp., supra* 444 U.S. at 292, 100 S.Ct. at 564. The inconvenience imposed on appellant should jurisdiction be exercised, coupled with the lack of contacts between appellant and Pennsylvania that due process would require, more than outweigh the other considerations. Appellant does not manufacture or sell products, but instead is engaged only in factory and warehouse construction. Nor has appellant ever constructed a building or solicited business in Pennsylvania. Rather, ninety percent of its construction during the past decade was done in Wisconsin and the remaining ten percent was done in states other than Wisconsin at the request of a local customer. (N.T. August 1, 1980, at 67a.) Even the auction,

although conducted by a Nebraska firm, took place in Wisconsin. The man-lift never left Wisconsin while it was owned by appellant. As in *Bev-Mark, Inc., supra,* "there is nothing to indicate that any contact with [Pennsylvania] by appellant influenced [the parties situated in Pennsylvania] to patronize appellant." *Id.* 268 Pa.Super. at 81, 407 A.2d at 446.

Thus, we find it unreasonable to find appellant subject to Pennsylvania's jurisdiction through such attenuated contacts with the Commonwealth and, accordingly, reverse the order of the lower court.

Reversed.