Action Industries, Inc. *v.* Wiedeman, Appellant.

448

Argued November 16, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Clifford L. Tuttle, Jr.*, with him *J. Jerome Mansmann, Carol Los Mansmann*, and *Mansmann & Mansmann*, for appellant.

*John M. Crimmins*, with him *Paul H. Titus, Sholom D. Comay*, and *Kaufman & Harris*, for appellee.

OPINION BY SPAETH, J., September 22, 1975:

This is an appeal from an order dismissing preliminary objections to jurisdiction and venue.[1] Appellant contends that the court did not have *in personam* jurisdiction over him because he is a nonresident not within

---

1. An order raising a question of jurisdiction is appealable by virtue of the Act of 1925, March 5, P.L. 23, §1, 12 P.S. §672. *And see, McCrory Corp. v. Girard Rubber Corp.*, 225 Pa. Superior Ct. 45, 307 A.2d 435 (1973). For procedural purposes, objections to venue are treated as raising a question of jurisdiction. Pa. R. C. P. 1017 (b) (1); *Gaetano v. Sharon Herald Co.*, 426 Pa. 179, 231 A.2d 753 (1967).

the reach of Pennsylvania's "long-arm" statute, Act of Nov. 15, 1972, P.L. 271, §8301 *et seq.,* eff. Feb. 13, 1973, 42 Pa. S. §8301 *et seq.* (Supp. 1973-74), and that the substituted service used to obtain jurisdiction over him was invalid because the suit was not filed in the county where the action arose as required by Pa. R. C. P. 2077-2079.

On November 9, 1973, appellee filed a complaint in trespass alleging breach of employment duties and conversion by appellant. Since appellant is a resident of Ohio, service was made upon the Department of State. On January 24, 1974, appellant filed preliminary objections to the complaint. Although the objections were properly endorsed with a Notice to Plead within twenty days, appellee did not file a responsive pleading. The court below dismissed the preliminary objections without opinion, and this appeal followed.

Appellant initially asserts that because of appellee's failure to respond to the preliminary objections, the allegations of fact made by the objections must be taken as true, and the objections sustained on that basis. It is true that failure to answer preliminary objections endorsed with a notice to plead constitutes an admission. Goodrich-Amram §1028(c)-2 (Supp. 1974). Pa. R. C. P. 1029 (b) provides: "(b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. . . ." It does not follow, however, that the preliminary objections must be sustained; that depends upon the facts that have been admitted. Furthermore, there is no admission of conclusions of law as distinct from allegations of fact. Goodrich-Amram §1028(c)-2. *Cf. Philadelphia & Reading Coal & Iron Co. v. Tamaqua Borough Sch. Dist.,* 304 Pa. 489, 495, 156 A. 75, 76 (1931) ; *Klerlein v. Fred Werner Co., Inc.,* 98 Pa. Superior Ct. 440, 446 (1930). Accepting as true the uncontradicted factual allegations of appellee's complaint and the additional factual allegations of appellant's preliminary objections, 2 Anderson

Pennsylvania Civil Practice §1017.19, the case may be stated as follows.

Appellee is a Pennsylvania corporation with its principal office in Allegheny County. Appellant is a resident of Ohio. On December 17, 1968, appellant and appellee executed an employment contract, effective January 1, 1969, under which appellant was to perform substantial services for appellee in Pennsylvania, specifically in Allegheny County. From January 1, 1969, to July 7, 1971 appellant performed under that contract.

On July 7, 1971, appellant assumed employment duties for appellee in the Plasta-Craft, Inc., plant at 330 Grandview Ave., Wadsworth, Ohio.[2] These duties arose in conjunction with an agreement entered into by appellee and Plasta-Craft on July 19, 1969. Under that agreement appellee delivered raw materials to Plasta-Craft, which Plasta-Craft used in the manufacture of plastic household goods for appellee. Appellee retained a purchase money security interest under the Uniform Commercial Code, §9-101 *et seq.*, in the raw materials and in the goods produced from those materials. At the time of the agreement, appellant was president of Plasta-Craft, as well as an employee of appellee. To protect appellee's security interest, appellant, as an employee of appellee, was charged with the duty of making periodic telephone reports from the Plasta-Craft plant in Ohio to appellee's office in Allegheny County; in these reports appellant would state the quantities of materials and goods on hand at the plant. Appellee relied on appellant to supply accurate information.[3]

---

2. These employment duties do not appear to have arisen under the original employment contract, although the employment relationship itself continued.

3. Before appellant assumed these duties, *i.e.*, from the time of the first deliveries of the raw materials until July 7, 1971, appellee periodically sent employees from its Allegheny County office to the Plasta-Craft plant to make physical checks of the

On March 31, 1973, Plasta-Craft ceased operations at the Ohio plant; it is now without any assets and has substantial liabilities. On November 9, 1973, appellee filed the complaint in trespass in this action alleging in two counts that it had lost goods having a value of $98,300 as a result of (1) appellant's breach of his employment duties in that he telephoned false information, and (2) appellant's conversion to his own use of materials and goods in which appellee had a security interest.

## I

In deciding whether appellant is within reach of the long-arm statute, two questions are presented: whether appellant's conduct was within the relevant provisions of the statute; and if it was, whether the exercise of *in personam* jurisdiction over appellant in the particular circumstances of this case complies with the constitutional mandate of due process of law.

## A

The long-arm statute, *supra*, contains three sections under which a nonresident individual may be found amenable to suit in Pennsylvania: §§8303,[4] 8304,[5] and

---

materials and goods on hand. These checks were discontinued as of July 7, 1971, when appellant assumed that responsibility.

4. §8303. *Commission of tortious acts by individuals.*

Any nonresident of this Commonwealth who, acting individually, under or through a fictitious business name, or through an agent, servant or employee, shall have committed a tortious act within this Commonwealth on or after August 30, 1970, or any such individual who at the time of the commission of the tortious act within this Commonwealth was a resident of this Commonwealth who shall subsequently become a nonresident or shall conceal his whereabouts, shall be conclusively presumed to have designated the Department of State as his agent for the receipt of service of process in any civil action or proceeding instituted in the courts of this Commonwealth against such individual.

5. §8304. *Doing business by individuals.*

Any nonresident of this Commonwealth who, acting indi-

8305. The section most applicable to the present case is §8305: *Causing harm by individuals.* It provides: "Any nonresident of this Commonwealth who, *acting outside of this Commonwealth,* individually, under or through a fictitious business name, or through an agent, servant or employee, shall have *caused any harm within this Commonwealth* on or after August 30, 1970, shall be subject to service of process in any civil action or proceeding in the courts of this Commonwealth *arising out of or by reason of any such conduct.* Service of process in any such civil action of proceeding shall be effected through the Department of State as provided in this chapter." (Emphasis added.)

The torts asserted in this case—breach of employment duties by transmission of false information and conversion—commenced with acts "occurring outside of this Commonwealth," and concluded with economic "harm within this Commonwealth."[6] The telephone calls al-

---

vidually under or through a fictitious business name, or through an agent, servant or employee, shall have done any business in this Commonwealth on or after August 30, 1970, or a resident of this Commonwealth who shall have done business in this Commonwealth on or after August 30, 1970 and thereafter shall have become a nonresident of this Commonwealth or shall conceal his whereabouts, shall be conclusively presumed to have designated the Department of State as his agent for the receipt of service of any process in any civil action or proceeding instituted in the Courts of this Commonwealth against such individual, if and only if at the time the cause of action accrued or the harm or financial loss occurred, the nonresident or the resident who shall thereafter have become a nonresident, shall have been doing any business within this Commonwealth as heretofore provided.

6. As has been mentioned, appellee, a Pennsylvania corporation with its principal office in Allegheny County, alleges damages of $98,300. This loss of income and profits will therefore be registered in Pennsylvania. There is no question that "harm" includes not only physical but economic harm. *Zimmermann v. Zimmermann,* —— F. Supp. —— (E.D. Pa. 1975); *Rosen v. Solomon,* 374 F. Supp.

legedly conveying false information originated in Ohio, but were received and detrimentally relied upon in Pennsylvania. The goods that were the subject of the alleged conversion were stored in Ohio, but the harm resulting from the loss of the value of the security interest in those goods occurred in Pennsylvania. This harm arose "out of or by reason of" appellant's alleged conduct. §8305 therefore supports *in personam* jurisdiction over appellant.[7]

B

In deciding whether the exercise of *in personam* jurisdiction over appellant complies with due process of law, the standard to be applied was set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) as follows: ". . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " The nature of the "minimum contacts" required under this standard was illustrated in *McGee v. International Life Insurance Co.,* 355 U.S. 220 (1957), where the Supreme Court held that due process was satisfied when jurisdiction was exercised over a nonresident corporation whose only contacts with the forum state were that it mailed a life insurance policy to that state and thereafter received the payment of premiums by mail from that state. The standard was further defined one year later when the Court stated that due process requires that a defendant "purposefully avails itself of the privilege of conducting

915 (E.D. Pa. 1974); *Aamco Automatic Transmissions, Inc. v. Tayloe,* 368 F. Supp. 1283 (E.D. Pa. 1973).

7. Having concluded that §8305 is applicable, we need not decide whether, as appellee claims, §8303 and §8304 are also applicable.

activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

In applying this standard, the courts have not hesitated to expand the concept of *in personam* jurisdiction in conjunction with recent developments in modern transportation and communications. *Rosen v. Solomon, supra. See McGee v. International Life Insurance Co., supra* at 222-23. The standard, however, does not lend itself to mechanical application; it must be applied on a case-by-case basis. *Rosen v. Solomon, supra* at 919. In *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa. Superior Ct. 12, 19, 323 A.2d 11, 15 (1974), this court, per JACOBS, J., has set forth "certain guidelines which aid in the factual analysis necessary to make the determination of whether the requisite 'minimum contacts' are present in a given case." Although these guidelines were promulgated in a case dealing with a foreign corporation, rather than with a nonresident individual, they are also useful in a similar determination for an individual if they are carefully applied.[8] The guidelines are as follows:

"First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its law . . . . Secondly, the cause of action must arise from defendant's activities within the forum state . . . . Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable . . . ."

It is evident that in the present case each of these guidelines is satisfied. Appellant voluntarily entered into

---

8. Cases involving corporations should be applied cautiously in cases involving individual defendants. *Stepnowski v. Avery,* 234 Pa. Superior Ct. 492, 340 A.2d 465 (1975).

a contract to perform substantial services for appellee in Allegheny County; he thus invoked the benefits of Pennsylvania law. His activities occurred in Ohio, but they also occurred in Pennsylvania, for his allegedly false telephone reports were received here, and the economic harm suffered as a result of his alleged conversion was suffered here. Finally, although the long-arm statute may not always reach as far for a nonresident individual as for a foreign corporation, the exercise of jurisdiction in this particular case is reasonable. The Commonwealth unquestionably has an interest in resolving a suit brought to safeguard the rights and property of one of its residents, including a corporate resident. *Proctor & Schwartz, Inc. v. Cleveland Lumber Co., supra; Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.,* 358 F. Supp. 441 (E.D. Pa. 1973). Appellant was not a minor employee of appellee but a business man and president of Plasta-Craft. His contacts with Pennsylvania originated in a commercial setting; and his assumption of his employment duties was actuated by a profit motive. "The emphasis of the [long-arm] statute is upon doing something in Pennsylvania for the purpose of making a profit." *McAndrew v. Burnett,* 374 F. Supp. 460, 462 (M.D. Pa. 1974). *Accord: Stepnowski v. Avery, supra.* Appellant's performance in reporting to appellee was unsupervised by any other employee of appellee, so that appellee's reliance on appellant was complete. Appellant must have anticipated that a failure to make accurate reports would have substantial consequences in Pennsylvania. "It is not unreasonable . . . to expect foreign businessmen who involve themselves, to [a significant] degree . . . in commercial transactions with citizens of their state to accept the corresponding burden of accepting service and defending themselves in a court of that state." *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc., supra* at 445. Moreover, nowhere in the record does it appear that it would be

physically or financially awkward for appellant to defend himself in this state. "Mere inconvenience to the defendant is not sufficient to deny plaintiff the forum of his choice." *Proctor & Schwartz, Inc. v. Cleveland Lumber Co., supra* at 16. *And see Rosen v. Solomon, supra,* and *Zimmermann v. Zimmermann, supra,* where individual defendants from far greater distances than Ohio—California and Florida, respectively—were required to defend in Pennsylvania.

The exercise of jurisdiction here is further supported by the decisions in two similar cases. In *Southeast Guaranty Trust Co., Ltd. v. Rodman & Renshaw, Inc.,* 358 F. Supp. 1001 (N.D. Ill. 1973), the defendants' only contact with the forum was their allegedly inaccurate response to one telephone call from a resident Illinois corporation. The court there held that this contact was of such a nature as to satisfy the due process clause, stating: "While this sending into the state of misinformation occurred over the telephone, it cannot be seriously argued that the lack of actual physical presence of the defendant vitiates any finding of jurisdiction." *Id.* at 1009. In *Parise v. AAA Warehouse Corp.,* 384 F. Supp. 1075 (W.D. Pa. 1974), where suit was brought against an Indiana warehousing corporation for personal injuries suffered by a Pennsylvania resident within the Commonwealth, but resulting from negligent conduct outside the Commonwealth, the required minimum contacts were established on the basis of the annual distribution of 100 advertising brochures within the Commonwealth, and the injury within the Commonwealth caused by the non-resident's negligence. Appellant's contacts were more extensive than in either of these cases.

Our decision today should not be interpreted as a precedent that will subject any non-resident employee of a Pennsylvania corporation to the jurisdiction of our courts. As has been noted, each case will be decided on its particular facts.

458

## II

The procedure for service of process under the long-arm statute is set forth in 42 Pa. S. §8307.[9] Essentially, the requirements are that process shall be served by registered or certified mail upon the Department of State and upon the defendant at his last known address. Here, service was made in compliance with this section by serving the Secretary of the Commonwealth[10] by certified mail, and by sending by certified mail a notice of the suit and a copy of the complaint to appellant's last known address in Ohio; the return receipt was signed by appellant's wife.[11]

---

9. §8307. *Procedure for service of process.*

Process directed to persons under this chapter shall be served, by the officer to whom such process shall be directed, upon the Department of State, by sending by registered or certified mail, postage prepaid, a true and attested copy of such process, with the fee required by law, and by sending to the defendant, by registered or certified mail, postage prepaid, a true and attested copy thereof, with an endorsement thereon of the service upon the Department of State, addressed to such defendant at his last known address. The Department of State shall keep a record of the day and hour of the service of such process on it. The registered or certified mail return receipts of the Department of State and of such defendant shall be attached to and made a part of the return of service of such process, except that if the defendant refuses to accept the notice mailed, or cannot be found at his last known address, the registered or certified mail return receipt or other evidence of such facts shall be attached to and made a part of the return and shall constitute sufficient service under the provisions of this section. The fee paid by the plaintiff to the Department of State at the time of service shall be taxed as costs to the plaintiff, if he prevails in the action necessitating the service of the process.

10. The Secretary of the Commonwealth is the chief officer of the Department of State. 4 Pa. Code §9.21, *adopted* April 14, 1973, 3 Pa. Bull. 691. *Stepnowski v. Avery, supra.*

11. In his preliminary objections appellant alleges that the service of process was defective because the Secretary of the Com-

For such substituted service to be valid, however, Pa. R. C. P. 2077, 2078 and 2079, [12] which relate to actions against nonresident defendants and the use of sub-

monwealth was not his agent to receive process, the copy was not delivered to appellant's business or residence address, and the receipt was not signed by appellant.

Appellant appears to have abandoned these objections upon appeal since they are not discussed in the argument section of his brief. Pa. Superior Ct. R. 45. In any case, the objections are without merit. The Secretary of the Commonwealth was appellant's agent for receiving service of process since this Court has found that appellant falls within the provisions of the long-arm statute calling for that type of service. Furthermore, the process need not be delivered to the business or residence address of the defendant as long as it is delivered to the defendant's last known address, as it was here. Neither is there a requirement that the defendant personally sign the certified mail return receipt. Appellant does not claim that he did not receive the process. Even if he made that claim, it would be of no avail, for if the procedures of the statute are complied with the fact that the defendant does not receive the process is of no constitutional consequence. *McCully-Smith Associates, Inc. v. Armour and Co.*, 358 F. Supp. 331 (W.D. Pa. 1973).

12. The applicable sections of the Rules are as follows:

*Rule 2077. Application of Rule.*
   (a) The rules of this chapter apply to
      (1) actions as to which the laws of this Commonwealth authorize service of process upon a nonresident, or a resident who becomes a nonresident or who conceals his whereabouts; . . .

*Rule 2078. Venue.*
   (a) An action of the class specified in Rule 2077(a)
      (1) shall be commenced in and only in:
         (1) a county in which the defendant may be personally served; or
         (2) the county in which the cause of action arose. . . .

*Rule 2079. Service of Process.*
   (a) If an action of the class specified in Rule 2077(a)(1) is commenced in the county in which the cause of action arose, process may be served upon the defendant personally or by having the sheriff of said county send by registered mail,

stituted service, must also be complied with.[13] At issue here is Rule 2078(a), which requires that unless the defendant is personally served, the action must be commenced in "the county in which the cause of action arose." Appellant takes the position that the cause of action, if any, arose in Ohio, where the raw materials and goods were located, where the loss of the raw materials and goods occurred, and where the duties under the alleged employment relationship were to be performed. Although these factual statements may be correct, they are not dispositive.

In a tort action, the cause of action arises where the injury is inflicted. Thus in *Emert v. Larami Corp.*, 414 Pa. 396, 402, 200 A.2d 901, 904 (1964), the Pennsylvania Supreme Court explained:[14] ". . . As no actionable tort could have been committed until a person was injured, it seems clear that . . . the cause of action arose in the county where the tort was in fact committed by the infliction of injury. To give to this Rule [a contrary] construction . . . would in many instances confine the provisions of the Rule to the county of a defendant's residence or place of business, whereas it was intended that the Rule should apply where the person was injured, which is quite often the county of residence of the complaining party." *Accord: Openbrier v. General Mills, Inc.*,

---

return receipt requested, a true and attested copy of the process:

   (1)  to the Secretary of the Commonwealth, accompanied by the fee prescribed by law, and

   (2)  to the defendant at his last known address with an endorsement thereon showing that service was made upon the Secretary of the Commonwealth . . .

13.   The long-arm statute is one of the statutes with which Rules 2077-79 are concerned. *Stepnowski v. Avery, supra* at 494.

14.   In *Emert*, the Court was interpreting the phrase "cause of action" under Pa. R.C.P. 1043—a rule substantially identical to Rule 2078 in purpose and language.

340 Pa. 167, 16 A.2d 379 (1940). *Cf. Wilk v. Ensign-Bickford Co.,* 421 Pa. 161, 218 A.2d 778 (1966). *See also Rufo v. The Bastian-Blessing Co.,* 405 Pa. 12, 173 A.2d 123 (1961) (where the court distinguishes between the place of commission of tortious acts on the one hand, and the place where the injury and the cause of action arose on the other hand.)

Count I of the complaint alleges that appellant violated his employment duties by inaccurate telephone reports, as a result of which appellee suffered economic harm in the amount of $98,300. Since this harm was inflicted in Allegheny County, where the telephone reports were received, where appellee maintains its principal office, and where loss of income is registered, the cause of action stated in Count I arose in Allegheny County.

Count II of the complaint alleges that appellant tortiously converted to his own use the goods in which appellee had a security interest, thereby unjustly enriching himself and causing financial injury to appellee. Appellant argues that a cause of action for conversion arises where the goods are converted, here, in Ohio.[15] It does not follow, however, that the cause of action may not also arise somewhere else, for the injury suffered may not be inflicted in only one place. Under the particular facts here, that is what happened. The injury from the alleged conversion may be regarded as the physical

---

15.  Research reveals only one case in which the specific issue of proper venue in a conversion action was dealt with. In *Filor, Bullard & Smyth v. Kegg,* 34 Fay. L.J. 90 (1971), the defendants were alleged to have converted securities; the plaintiff had mistakenly sent the securities to the defendants in Pennsylvania, and the defendants had sold them on the stock exchange in New York City. The court held that venue was properly in New York City. The decision is of no significance to the present question, however, since the plaintiff did business in New York City. Thus the place of conversion and the place of injury were the same, and the court was not required to choose one place rather than the other.

loss of the raw materials and goods; but it may equally readily be regarded as exactly the same as the injury inflicted by the inaccurate telephone reports—economic harm in the form of. the loss of the value of appellee's security interest, suffered in Allegheny County. The reason for the "place of injury" rule is that the injured plaintiff should be allowed to choose the forum of the injury rather than being limited to the forum of the defendant's convenience. This reason is as persuasive in a case of conversion as it is in a case of negligence.

The order of the lower court is affirmed.