## Maloney v. Hall

*William T. Cullen,* for plaintiff.
*Thomas E. Mack, James P. Blaum,* for defendant.

MUNLEY, *J.,* November 7, 1983—This matter is before the court on defendants' preliminary objections raising the questions of venue and jurisdiction of the Pennsylvania Courts to plaintiffs' action in assumpsit and trespass.

Pa. R.C.P. 1029(b) provides:

(b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. . . ."

In this case, the only documents containing factual avertments filed to date are plaintiffs' complaint and defendants' preliminary objections. Defendants have chosen not to file an answer. Therefore, accepting as true the uncontradicted factual allegations of the complaint and the additional factual allegations of the preliminary objections, Action Industries, Inc. v. Wiedeman, 236 Pa. Super. 447, 346 A.2d 798, 800 (1975); Leu v. Leu, 481 F. Supp, 899, 901 (W.D. Pa. 1979); 2 Anderson Pennsylvania Civil Practice, §1017.19, the case may be stated as follows:

An option agreement was entered into between Robert Maloney, plaintiff, acting for himself and co-plaintiffs, R. Brian Maloney, J. Timothy Maloney, J. Kerry Maloney, and Irish Meadow Farm (hereinafter IMF), a partnership composed of the above-named individuals, and Patricia McSweeney, acting for herself and defendants, Margaret Hall, Opal Mitchell, and Tri-M Stables (hereinafter Tri-M), a partnership comprised of defendants and McSweeney, for the sale and purchase of a package of mares and a stallion. Both IMF, a Pennsylvania partnership, and Tri-M, a California partnership, are engaged in the business of breeding, buying,

selling and racing standard bred horses and are registered with the United States Trotting Association (hereinafter U.S.T.A.) for such purposes. The registration form filed with the U.S.T.A. and signed by defendants Hall and Mitchell as well as McSweeney, designates McSweeney as "Corresponding Officer and acknowledge that his signature on all documents relating to the stable or farm will be binding on us."

The facts averred indicate that in the summer of 1983, plaintiffs offered a group of mares and a stallion for sale. McSweeney contacted plaintiffs and stated that she and her investing group would be interested in purchasing such a package. Informational material was given to her and on or about October 7, 1982, Plaintiffs Robert and Brian Maloney went to California to meet with McSweeney. During such meetings, McSweeney informed plaintiffs that the sale was to be made to defendant Tri-M. On October 24, 1982, McSweeney was met in Lexington, Kentucky, by the above named plaintiffs. In the latter part of October, McSweeney, acting for herself and for Tri-M as well as the individual defendants, inspected the mares and negotiated with plaintiffs in Lackawanna County, Pa., various terms and conditions for this sale and purchase. Further, McSweeney indicated that any agreement was contingent until acceptance of these terms by defendants Hall and Mitchell. In addition, Gordon Dickerson, who prepared the pedigrees of all mares in the package, went to California in early November, 1982, to discuss the mares with defendants Hall and Mitchell. On November 10, 1982, McSweeney informed plaintiffs that defendants Hall, Mitchell and Tri-M had agreed to purchase the mares. In November a series of promissory notes and a "Memorandum of Agreement"

were prepared in California and sent to Lackawanna County, Pa. where they were accepted by plaintiffs.

Prior to these negotiations, plaintiffs had made inquiry to the U.S.T.A. concerning McSweeney's financial condition and learned about the partnership, Tri-M, and that defendants Mitchell and Hall had considerable financial means.

On November 26, 1982, upon receipt of a cashier's check in the amount of $25,000, plaintiffs began preparations to ship 12 horses from their farm in Lackawanna County, Pa. and gave the mares over in Lackawanna County, Pa., to a common carrier selected by defendants. This payment was secured by a loan, arranged by the individual defendants and Tri-M, together with McSweeney, from the First Interstate Bank Turlock Branch of California. The 12 mares were pledged as collateral for this loan. Additionally, upon receipt of horses in California, they were registered with the U.S.T.A. as owned by Tri-M Stables.

Turning to the merits of defendant's jurisdictional argument, they assert the familiar claim that since they are residents of California they lack sufficient contacts with Pennsylvania to allow this court to exercise jurisdiction over them, relying upon 42 Pa. C.S.A. §5301 as the general rule to determine personal jurisdiction. They allege that they were neither present nor domiciled in the Commonwealth at the time process was served and further, never consented to jurisdiction. Additionally, they assert that defendant partnership, which is formed under the laws of California, has not consented to jurisdiction and has not carried on any of its general business within the Commonwealth. Further, they assert that 42 Pa. C.S.A. §5322, commonly known as the Long Arm Statute, is inapplicable because

there is no allegation of any transaction of business on the part of the individual defendants and/or defendant partnership and that no defendant had prospect of pecuniary benefit.

Plaintiffs contend that jurisdiction over the defendants is proper pursuant to the Long Arm Statute, Id., due to the authority given to McSweeney to act for and to bind defendants.

The issue presented to this court is whether the defendant's conduct was within the relevant provisions of the Long Arm Statute, 42 Pa. C.S.A. §5321-5329. The statute is the applicable law controlling the exercise of in personam jurisdiction over non-residents and permits exercise of such jurisdiction over non-residents who have taken any of several different actions, including:

"(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(iii) . . . .

(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

(v) The ownership, use or possession of any real property situate within this Commonwealth.

(2) . . .

(3) . . .

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

42 Pa. C.S.A. §5322(a) 1(i)-(v), (4). We are satisfied that defendants in the present case fall within the scope of this provision.

It is evident to this court that defendants clothed McSweeney with both express and apparent authority to be their agent in these matters. The U.S.T.A. application certainly establishes that McSweeney could act for defendants in these circumstances; through this application, defendants held McSweeney out to all in the trotting industry as their agent. Further, defendants secured a loan for this purchase, using the items purchased as collateral, and then registered said items as their own property with the U.S.T.A.

It follows, therefore, that McSweeney's actions are the actions of defendants and they are bound by her signature. We are satisfied that there is sufficient evidence to support our finding that McSweeney, with whom plaintiffs dealt, had authority to enter into, on behalf of defendants, the option agreement upon which this action was based. Hartley v. United Mine Workers of America, Robena Local Union No. 6321, 381 Pa. 430, 113 A.2d 239 (1955).

Under the Uniform Interstate and International Procedure Act, i.e. Pennsylvania's Long Arm Statute, 42 Pa. C.S.A., §5321 et seq., a state court may exercise personal jurisdiction over non-resident defendants as long as the requirements of due process are satisfied. Id. Section 5322(b) and (d). The due process clause requires that there be sufficient minimum contacts between the defendant and the

foreign state to warrant the state's assertion of personal jurisdiction over the defendant. International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S. Ct. 154, 159, 90 L.Ed. 95 (1945), World-Volkswagon Corp. 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed.2d 490 (1980), Kenny v. Alexson Equipment Company, 495 Pa. 107, 432 A.2d 974 (1981). This is required so that the maintenance of the suit against the non-resident defendant does not offend traditional notions of "fair play and substantial justice." International Shoe supra. To determine whether there are sufficient contacts for the exercise of jurisdiction a court must inquire whether "the quality and nature of defendant's activity is such that it is reasonable to require [that it] conduct its defense in that state." Kulko v. Superior Court of California, 436 U.S. 84, 92, 98 S. Ct. 1690, 1697, 56 L. Ed.2d 132 (1978). The minimum contact test of International Shoe is not a mechanical one but rather the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present. Id. at 92, 98 S. Ct. at 1697.

To determine whether the exercise of jurisdiction complies with due process of law, the courts have set forth certain guidelines to determine whether the defendant has the requisite "minimum contacts" with the forum state in accordance with International Shoe, supra. These standards were articulated in Proctor & Schwartz v. Cleveland Lumber Co., 228 Pa. Super. 12, 19, 323 A.2d 11, 15 (1974), as follows:

"First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protection of its law . . . Secondly, the cause of action must arise from defendant's activities within the forum state. . . . Lastly, the acts of the defendant must

have substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable . . . ."

We are satisfied that all three requirements have been met in the present case. First, defendants availed themselves of the privilege of acting within Pennsylvania when McSweeney, as their representative, entered into the option agreement worth $950,000. The negotiations and inspection took place in Pennsylvania and the agreement called for plaintiffs to ship the horses. "When obligations entered into by a foreign corporation have a realistic economic impact on the commerce of this Commonwealth and where the defendant should reasonably have foreseen that the transaction would have consequences in this Commonwealth the defendant has purposefully availed itself of the privilege of acting within the Commonwealth." Proctor & Schwartz v. Cleveland Lumber Co., 228 Pa. Super. at 19, 20, 323 A.2d at 15; accord Hart v. McCollum, 249 Pa. Super. 267, 376 A.2d 644 (1977).

The second step toward a finding of the minimum contacts necessary to a valid exercise of in personam jurisdiction by the court is a finding that the cause of action arose from defendant's activities within Pennsylvania. We find that plaintiff's cause of action arose directly from defendant's acts within this state. It is the "defendant's act of entering into a contract that he knows will be substantially performed in the forum state that constitutes the defendant's purposefully avail[ing] itself of the privilege of acting within the forum state." Koening v. International Brotherhood of Boilermakers, 284 Pa. S. 558, 572, 573, 426 A.2d. 635, 641, 642 (1980). In the present case, plaintiff's performance was to be in Pennsylvania (e.g. the preparation and shipping of the package of mares). Secondly, defendants

have failed to make payment in Pennsylvania thus breaking the contract. The cause of action is in Pennsylvania where the economic harm is felt. Lastly, the contract calls for future performance by and payment to the plaintiffs.

Lastly, we find that the exercise of jurisdiction in case is fair and reasonable under the circumstances. "To the extent the buyer vigorously negotiates, perhaps dictates, contract term, inspects production facilities and otherwise departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of longarm jurisdiction over him disappears." In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F.2d 220, 233 (1972). In the present case we believe the substantial negotiations over the terms of the agreement, the discussions between the parties as to the pedigrees of the mares, the inspection of the "package" by McSweeney, as agent for defendants, all suggest that defendants were not passive purchasers. Moreover, in Action Industries, Inc. v. Wideman, 236 Pa. Super. 447, 346 A.2d 798 (1975), the court stated that "[M]ere inconvenience to the defendant is not sufficient to deny plaintiff the forum of his choice." (Citations omitted.) 236 Pa. Super. at 457, 346 A.2d at 803. There is nothing in the record to indicate that it would be physically or financially awkward for defendants to defend themselves in Pennsylvania.

Further, defendants' contacts with Pennsylvania originated in a commercial setting and their entering into the option agreement was activated by a profit motive. We, therefore, hold that under the facts of this case the exercise by Pennsylvania courts of in personam jurisdiction over defendants does not violate due process requirements.

Having concluded that jurisdiction is permissible, we further find that the Courts of Lackawanna County have proper venue for this case. Pa.R.C.P. 2078 provides that an action may be maintained against a non-resident individual in a county where, inter alia, the cause of action or a transaction or occurrence took place out of which the cause of action arose. Further Pa.R.C.P. 2130, allows an action to be maintained against a partnership in a county where a transaction or occurrence took place out of which the cause of action arose. There are more acts, occurrences, and economic harm suffered in this case related to Lackawanna County than any other county within Pennsylvania.

## ORDER

Now, this November 7, 1983, it is hereby ordered, that the preliminary objections of defendant are dismissed. Defendant shall be allowed 30 days in which to file a responsive pleading.