380

645 A.2d 1350

**COLT PLUMBING CO., INC., Appellant,**

v.

**Peter C. BOISSEAU, Appellee.**

Superior Court of Pennsylvania.

Argued April 6, 1994.

Filed Aug. 11, 1994.

Patti C. Lerda, Swissvale, for appellant.

Richard B. Druby, Harrisburg, for appellee.

Before ROWLEY, President Judge, and KELLY and POPOVICH, JJ.

POPOVICH, Judge:

This case involves an appeal from the order of the Court of Common Pleas of Cumberland County granting the preliminary objections for lack of jurisdiction and venue of the defendant, Peter C. Boisseau, Jr., and dismissing the com-

plaint of the plaintiff appellant, Colt Plumbing Co. We reverse.

On an appeal from an Order sustaining preliminary objections, we accept as true all well-pleaded material facts set forth in the appellant's complaint and all reasonable inferences which may be drawn from those facts. Whether a state may exercise in personam jurisdiction over a nonresident defendant must be tested against the state's long arm statute and the due process clause of the fourteenth amendment of the United States Constitution. If jurisdiction may be conferred by the state's long arm statute, a tribunal must next determine whether the defendant has established minimal contacts with the forum state. Finally, it must be established the assertion of in personam jurisdiction would not violate the "traditional notions of fair play and substantial justice."

*Filipovich v. J.T. Imports Inc.*, 431 Pa.Super. 552, 637 A.2d 314, 316 (1994) (Citations omitted).

While Pennsylvania's long-arm statute, 42 Pa.C.S.A. § 5322(a)(4), provides that "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth" is a basis for personal jurisdiction, " 'the constitutional touchstone remains whether the defendant *purposefully* established 'minimum contacts' in the forum state.' " *Kachur v. Yugo America, Inc.*, 534 Pa. 316, 632 A.2d 1297, 1300 (1993), quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985). Further, we need to consider whether Peter C. Boisseau, Jr. had sufficient contact with Pennsylvania to justify the exercise of in personam jurisdiction; that is to say, was his connection with Pennsylvania "such that [he] should reasonably anticipate being haled into court there." *Kubik v. Letteri*, 532 Pa. 10, 614 A.2d 1110, 1114 (1992), citing *Burger King Corp.*, supra.

With the preceding in mind, the record indicates that the plaintiff terminated the defendant's employment upon discovering that the defendant, contrary to the exclusive employment contract with the plaintiff, operated a business in Virginia in direct competition with the plaintiff, a Pennsylvania

corporation. A 4–count complaint was filed seeking damages and injunctive relief on grounds of breach of contract, breach of fiduciary duty and unfair competition taking the form of disparagement, use of trade secrets and confidential information.

In reply, the defendant filed preliminary objections based upon a lack of personal jurisdiction and improper venue, the former of which was premised upon the following assertions:

1. The defendant Peter C. Boisseau, Jr. is an adult individual and a citizen of the State of Virginia, with a residence at 3123 Plymouth Place, Mechanicsville, Virginia 23111.

2. Defendant Boisseau is not a Pennsylvania citizen nor is he domiciled within the Commonwealth of Pennsylvania.

3. Defendant Boisseau has no offices or places of business in Pennsylvania.

4. Defendant Boisseau has no ownership interest in any Pennsylvania business entities.

5. Defendant Boisseau acquires no gross receipts from Pennsylvania customers, either directly or indirectly.

6. Defendant Boisseau has not incurred, nor has been required to pay any taxes to the Commonwealth of Pennsylvania.

7. Defendant Boisseau has no authorized agents to receive service of process in Pennsylvania.

8. With respect to the transaction giving rise to this action, Mr. Boisseau has never traveled to Pennsylvania.

9. Additionally, with respect to the alleged transaction, Defendant Boisseau has never visited the Pennsylvania corporate office of the Plaintiff.

10. With respect to the Plaintiff's alleged employment of the Defendant, Defendant Boisseau never filled out a job application issued by the Plaintiff.

11. In fact, there is no written contract evidencing employment of the Defendant by the Plaintiff. As such, Defendant Boisseau did not execute any contract within the Commonwealth of Pennsylvania.

12. With respect to customers of the Defendant, the Defendant maintained his own client list, with all of those clients being located in Virginia.

13. Defendant Boisseau never received training by the Plaintiff, in Pennsylvania or otherwise.

14. Defendant Boisseau does not have any telephone listing in the Commonwealth of Pennsylvania.

15. Defendant Boisseau does not have any real estate holdings within the Commonwealth of Pennsylvania.

16. Defendant Boisseau has not had any significant outlays to Pennsylvania concerns, including taxes.

17. Defendant Boisseau has never sold Plaintiff's products to any customers in Pennsylvania at any time.

The absence of proper venue was predicated upon Pa.R.Civ.P. 1006. In support thereof, the defendant averred that:

27. .... Defendant Boisseau never filled out any job application with the Plaintiff, in Pennsylvania or otherwise.

28. In fact, there is no written contract evidencing Defendant's employment with the Plaintiff.

29. Any agreement reached between the parties was reached in Virginia.

30. All sales made by the Defendant on behalf of the Plaintiff were made in Virginia.

31. All contracts entered into between the Defendant and his clients to which he sold products were entered into in Virginia.

32. As such, all of Defendant's sales and records are located in Virginia.

33. Moreover, all of Defendant's sales records are located in Virginia.

34. At no time did Defendant Boisseau ever travel to Pennsylvania nor did Defendant Boisseau ever visit the Plaintiff's Pennsylvania corporate office.

35. All evidence of Plaintiff's customers, profits, business reputation and market share (i.e., business climate) is located in Virginia.

36. As such, no cause of action arose in Pennsylvania, nor did any transaction or occurrence take place in Pennsylvania out of which this alleged cause of action arose.

The plaintiff filed a response to the defendant's preliminary objections contending, in pertinent part, that:

1.–2. ...

3. ... Plaintiff avers that Defendant used an office and place of business in Pennsylvania during the time period material to Plaintiff's Complaint. Defendant maintained daily contact with Plaintiff's principal office in Cumberland County, Pennsylvania, and had several of Plaintiff's employees in Pennsylvania assigned to assist Defendant in his business dealings. . . .

4. ... Defendant had a substantial ownership interest in Plaintiff's Profit Sharing Plan located in Pennsylvania. . . .

5.–9. ...

10. It is admitted that Defendant did not complete a standard job application for Plaintiff, although Defendant did complete several job related forms evidencing Defendant's employment status with Plaintiff, included but not limited to a W–4 Employee's Withholding Allowance Certificate, Group Insurance Enrollment and Capital Blue Cross of Pennsylvania Blue Shield Application for enrollment. . . .

11. Plaintiff admits that there is no written contract of employment of the Defendant and Plaintiff. By way of further answer, Plaintiff specifically denies that there is no written contract evidencing employment of the Defendant by the Plaintiff. . . .

12. It is specifically denied that Defendant maintained his own customer list in Virginia. Plaintiff provided Defendant with a complete list of Plaintiff's customers in Virginia at the time Defendant became employed by Plaintiff. Plaintiff maintained a list of Plaintiff's customers in Virginia on a monthly basis during the period of Defendant's employment with Plaintiff. . . .

13. It is specifically denied that Defendant never received training by Plaintiff. Plaintiff provided Defendant with

instruction on Plaintiff's operating procedures and Plaintiff provided on-going assistance to Defendant during Defendant's employment with Plaintiff.

14. ... Defendant did utilize a telephone listing at the Plaintiff's office in Pennsylvania, which Virginia customers routinely called to place orders with Plaintiff. Defendant routinely distributed business cards and information with Plaintiff's 800 telephone number in Pennsylvania for Virginia customers to call and place orders and correspond with Defendant as needed....

15.–20. ...

21. Defendant's actions purposefully availed himself of the privilege of conducting business within the forum state, involving the benefits and protection of Pennsylvania Laws.

22.–28. ...

29. ... All agreements between the parties were not reached in Virginia, but many agreements were made in Pennsylvania via telephone and facsimile communications.

30. It is specifically denied that all sales made by Defendant were made in Virginia. Strict proof to the contrary is demanded at Trial. By way of further response, Plaintiff and its authorized agents received numerous calls in Pennsylvania from Virginia customers, and negotiated sales on Defendant's behalf over the telephone and facsimile. Defendant had several employees of Plaintiff assigned to him in Pennsylvania to handle sales calls for customers in Virginia and accept messages for Defendant.

31. ...

32. ... Plaintiff maintains sales records and customer lists pertaining to Defendant's employment in Pennsylvania.

33.–34. ...

35. ... Plaintiff maintains complete records of its customers, profits, and market share concerning its Virginia territory in Pennsylvania. All evidence to this effect is located in its corporate office in Pennsylvania.

36. ... Plaintiff avers that transactions occurred between the parties on a daily basis at the corporate office in

Pennsylvania and Defendant regularly conducted business in the State of Pennsylvania and reaped the benefits and profits from within the Commonwealth of Pennsylvania. 37. ...

What followed was an opinion and order dated September 3, 1993, whereby the defendant's preliminary objections were granted and the plaintiff's cause of action was dismissed. The basis for the court's determination was predicated upon the conclusion that, albeit the statutory requirements of Pennsylvania's long-arm statute had been satisfied (42 Pa.C.S.A. § 5322(a)(4)), the defendant did not have sufficient minimum contacts with Pennsylvania. Also, "[t]o hold Pennsylvania as the proper jurisdiction would inconvenience all other parties to this action" and offend notions of "reasonable[ness] and fair" play called for by the Due Process Clause of the Fourteenth Amendment. Court Opinion, 9/3/93 at 7.

Lastly, the court ruled that, pursuant to Pa.R.Civ.P. 1006, venue was improper in Cumberland County because the alleged oral contract ("offer") was consummated ("accepted") in Virginia. This appeal ensued and raises three issues for our consideration, the first of which claims that the court erred in using an improper standard of review in granting the defendant's preliminary objections.

More specifically, the plaintiff argues that it produced evidence which the court did not consider as true in support of proper jurisdiction, i.e., 1) defendant's almost daily contact with the plaintiff's office for almost five years; 2) the exclusive employee status of the defendant in Virginia as sales representative for the plaintiff; and 3) the defendant caused "harm" to the plaintiff in Pennsylvania. The record indicates that the "contacts", "contract" and "harm" assertions of the plaintiff were considered as true by the court; namely:

> After careful consideration of the record in its entirety and *in the light most favorable to the plaintiff,* we do not believe the defendant has sufficient minimum contacts with Pennsylvania to sustain personal jurisdiction. The oral employment contract standing alone is insufficient to estab-

lish minimum contacts. The defendant's only contact with the foreign state in connection with the oral contract has been via telephone. In contemplation of his actual course of employment, it was only considered that the defendant would deal strictly out of Virginia. Additionally, it is admitted that the defendant has not sold any products to Pennsylvania residents.

Court Opinion, 9/3/93 at 6 (Emphasis added).

Therefore, because the court held that the plaintiff had not proven sufficient minimum contacts between the defendant and this jurisdiction, the burden remained with the plaintiff to prove in personam jurisdiction. See *Alumbaugh v. Wallace Business Forms*, 226 Pa.Super. 511, 313 A.2d 281, 283 (1973). Nonetheless, albeit the court utilized the correct standard in reviewing the appellant's initial complaint, the result reached—no minimum contacts—is refuted by the record when viewed in light of the applicable law.

For instance, *Burger King Corp.*, supra, dealt with a breach of contract action, instituted by the corporation at Miami headquarters in Florida, against a Michigan franchisee who challenged the Florida court's jurisdiction as violative of traditional notions of fair play and substantive justice embodied in the Due Process Clause of the Fourteenth Amendment.

The Federal District Court, sitting in diversity, relied on Florida's long-arm statute (§ 48.193(1)(g) (Supp.1984)) to exercise personal jurisdiction over Rudzewicz (a Michigan resident) for allegedly breaching his franchisee agreement with Burger King, a Florida corporation, by failing to make required payments in Florida. As a result, Burger King terminated Rudzewicz's franchise and sought, inter alia, damages awarded following a bench trial totalling $228,875.00.

Rudzewicz's appeal to the Court of Appeals for the Eleventh Circuit resulted in a reversal of judgment on the ground that "[j]urisdiction under the[ ] circumstances ... offend[ed] the fundamental fairness which is the touchstone of due process." *Burger King Corp. v. MacShara*, 724 F.2d 1505, 1513 (11th Cir.1984). On appeal to the United States Supreme Court,

the judgment of the Court of Appeals was reversed. In doing so, the Court made remarks germane to our disposition; to-wit:

> ... with respect to interstate contractual obligations, we have emphasized that parties who "reached out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities. *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). See also *McGee v. International Life Insurance Co.,* 355 U.S. 220, 222–223, 78 S.Ct. 199, 200–201, 2 L.Ed.2d 223 (1957).

We have noted several reasons why a forum legitimately may exercise personal jurisdiction over a nonresident who "purposefully directs" his activities toward forum residents. A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Id.,* at 223, 78 S.Ct. at 201; see also *Keeton v. Hustler Magazine, Inc., supra,* 465 U.S. [770], at 775, 104 S.Ct. [1473], at 1479 [79 L.Ed.2d 790 (1984) ]. Moreover, where individuals "purposefully derive benefit" from their interstate activities, *Kulko v. California Superior Court,* 436 U.S. 84, 96, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 132 (1978), it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engaged in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. *McGee v. International Life Insurance Co., supra,* 355 U.S., at 223, 78 S.Ct., at 201.

Notwithstanding these considerations, the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. *Interna-*

*tional Shoe Co. v. Washington, supra,* 326 U.S. [310], at 316, 66 S.Ct. [154], at 158 [90 L.Ed. 95 (1945) ].

\*　　\*　　\*　　\*　　\*　　\*

... "the foreseeability that is critical to due process analysis ... is that the Defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* [*World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286], at 297, 100 S.Ct. [559], at 567 [62 L.Ed.2d 490 (1980) ]. In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958):

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

\*　　\*　　\*　　\*　　\*　　\*

Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. *McGee v. International Life Insurance Co., supra,* 355 U.S., at 223, 78 S.Ct., at 201; see also *Kulko v. California Superior Court, supra,* 436 U.S., at 94, n. 7, 98 S.Ct., at 1698, n. 7. Thus where the defendant "deliberately" has engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc., supra,* 465 U.S., at 781, 104 S.Ct., at 1481, or has created "continuing obligations" between himself and residents from the forum, *Travelers Health Assn. v. Virginia,* 339 U.S., at 648, 70 S.Ct., at 929, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by

"the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. *Keeton v. Hustler Magazine, Inc., supra*, 465 U.S., at 774–775, 104 S.Ct., at 1478; see also *Calder v. Jones*, 465 U.S. [783], at 778–790, 104 S.Ct. [1482], at 1486–1487 [79 L.Ed.2d 804 (1984)]; *McGee v. International Life Insurance Co.*, 355 U.S., at 222–223, 78 S.Ct., at 200–201....

471 U.S. at 473–477, 105 S.Ct. at 2182–84, 85 L.Ed.2d 528 (Footnote omitted; emphasis in original).

Applying the principles just recited, the United States Supreme Court found that sufficient "minimum contacts" had been established to require Rudzewicz to be called to account for the injuries sustained by the corporation in Florida. This was so despite the fact that:

... no physical ties to Florida c[ould] be attributed to Rudzewicz other than [his partner's] brief training course in Miami. Rudzewicz did not maintain offices in Florida and, for all that appears from the record, ha[d] never even visited there. Yet this franchise dispute grew directly out of "a contract which had a *substantial* connection with that State." *McGee v. International Life Insurance Co.*, 355 U.S., at 223, 78 S.Ct., at 201 (emphasis added). Eschewing the option of operating an independent local enterprise, Rudzewicz deliberately "reach[ed] out beyond" Michigan

and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization. *Travelers Health Assn v. Virginia,* 339 U.S., at 647, 70 S.Ct., at 929. Upon arrival, he entered into a carefully structured 20–year relationship that envisioned continuing and wide-reaching contact with Burger King in Florida. In light of Rudzewicz' voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the "quality and nature" of his relationship to the company in Florida can in no sense be viewed as "random," "fortuitous," or "attenuated." *Hanson v. Denckla,* 357 U.S., at 253, 78 S.Ct., at 1239; *Keeton v. Hustler Magazine, Inc.,* 465 U.S., at 774, 104 S.Ct., at 1478; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S., at 299, 100 S.Ct., at 568. Rudzewicz' refusal to make the contractually required payments in Miami, and his continued use of Burger King's trademarks and confidential business information after his termination, cause foreseeable injuries to the corporation in Florida. For these reasons it was, at the very least, presumptively reasonable for Rudzewicz to be called to account there for such injuries.

471 U.S. at 479–481, 105 S.Ct. at 2185–2187 (Footnote omitted; emphasis in original).

■ Consistent with the teaching of *Burger King Corp.,* supra, which has been adopted by the Pennsylvania Supreme Court in *Letteri,* supra, we look beyond the singularity of the contract between the litigants to "the parties' actual course of dealing" in determining whether the defendant purposefully established minimum contacts within the forum, which is but one factor in assessing the presence of sufficient contacts with the forum state to satisfy the first prong of the in personam jurisdiction of a non-resident defendant.[1] 471 U.S. at 479, 105 S.Ct. at 2185.

1. The second prong necessitates that imposing in personam jurisdiction does not violate traditional principles of "fair play and substantial justice." *Burger King Corp.,* supra, held that this aspect of the test had

■ As in *Burger King Corp.*, supra, the defendant here has no physical ties to the forum state, maintains no offices *personally* in Pennsylvania and, as is evident from the pleadings, has never even visited here. Notwithstanding such facts, the plaintiff's cause of action grew directly out of a contract which had *substantial* connection with this Commonwealth; namely: 1) the parties' negotiations created a business relationship that operated without incident for five (5) years; 2) the defendant communicated by phone with the plaintiff on a daily basis from Virginia to receive his messages left by Virginia clients, to set up and obtain notice of appointments with said clients left via an "800" number provided by the plaintiff; 3) the plaintiff's confidential information and customer list were accessible to the defendant; and 4) the defendant used an office and place of business in Pennsylvania during his employment; 5) the defendant owned a substantial interest in the plaintiff's profit sharing plan located in Pennsylvania; 6) the defendant completed job-related forms (W–4; insurance enrollment) for the plaintiff; and 7) the defendant took the initiative to secure employment with the Pennsylvania-based plaintiff.

In light of the aforementioned, it cannot be gainsaid that the defendant's acceptance of the monetary and health-care benefits flowing from his employment for some five (5) years with the plaintiff was in no sense "random," "fortuitous," or "attenuated." *Burger King Corp.*, supra. Further, viewing the allegations of the plaintiff's (as the non-moving party) as true, the defendant's breach of his exclusive sales contract with the plaintiff and expropriation of confidential information and revenues from potential customers in Virginia and other assets belonging to the plaintiff for his own benefit, including but not limited to the plaintiff's copyright sales catalog while in Virginia, caused foreseeable injuries to the corporation in Pennsylvania, which the plaintiff has a right to prove in a court of law.

For these reasons it is, at the very least, presumptively reasonable for Boisseau to be called to account here for such

been met by the corporation and Rudzewicz was subject to jurisdiction of the Florida courts.

injuries. *Burger King Corp.*, supra, 471 U.S. at 480, 105 S.Ct. at 2186. Accord *Action Industries, Inc. v. Wiedeman,* 236 Pa.Super. 447, 346 A.2d 798 (1975). Therefore, it is not unreasonable to find that the defendant should anticipate being haled into court in Pennsylvania to defend against the claims made. *Id.*

■ Next, we wish to respond to the court's holding that it would not be "reasonable and fair" to the defendant to find jurisdiction in Pennsylvania because:

> The alleged breach occurred in Virginia, the defendant is residing in Virginia, and all the customers of the defendant who might be potential witnesses are found in Virginia.

Court Opinion, 9/3/93 at 7. This forum non conveniens approach by the court is facially appealing but substantively flawed in that the determination of the situs of the cause of action is gauged by where the injury is inflicted and not where the act(s) leading to it were committed. See *Emert v. Larami Corp.*, 414 Pa. 396, 200 A.2d 901 (1964). This translates into acknowledging that the defendant's conduct caused economic harm to the plaintiff in Pennsylvania as a result of the alleged breach of contract in Virginia by the loss of revenue. *Wiedeman,* supra.

■ The substance of the court's remaining argument is that the case should be heard in Virginia, the location of the breach and the place where witnesses for the defendant and the defendant reside. "However, ... it is the plaintiff['s] ... burden to prove the cause and extent of the [damages] so that any inconvenience or expense will be borne by it and not [Boisseau]." *Beatrice Foods Co. v. Proctor & Schwartz,* 309 Pa.Super. 351, 455 A.2d 646, 650 (1982). Moreover, this breach of contract case is one where both parties will have witnesses for whom Cumberland County, Pennsylvania, will be as convenient and accessible as any location within Virginia. *Id.* And as noted by *Burger King Corp.,* " 'modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject

him to the burdens of litigation in another forum for disputes relating to such activity." 471 U.S. at 474, 105 S.Ct. at 2183, quoting *McGee v. International Life Insurance Co.*, supra, 355 U.S. at 223, 78 S.Ct. at 201.

Our decision today should not be interpreted as a precedent that will subject any non-resident employee of a Pennsylvania corporation to the jurisdiction of our courts, for each case will be decided on its particular facts. *Burger King Corp.*, supra; *Letteri*, supra; *Barber v. Pittsburgh Corning Corp.*, 317 Pa.Super. 285, 464 A.2d 323, 331 (1983); *Wiedeman*, supra.

Having concluded that the court's finding that no minimum contacts was inconsistent with the facts viewed in a light most favorable to the non-moving-party/plaintiff's case, and notions of fair play and substantial justice of the Due Process Clause of the Fourteenth Amendment are not violated, the need to address the remaining two issues of the appellant is rendered moot with our reversal of the order granting the defendant's preliminary objections and dismissing plaintiff's complaint.

Order reversed, case remanded and jurisdiction is relinquished.