611 A.2d 758

**Paul WESTHEAD, Appellant,**

v.

**Bruce G. FAGEL, Esquire, Appellee.**

Superior Court of Pennsylvania.

Argued April 21, 1992.

Filed July 2, 1992.

Patrick C. Campbell, Jr. and Richard G. Phillips, Philadelphia, for appellant.

David H. Marion, Philadelphia, for appellee.

Before ROWLEY, President Judge, and MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County, entered on June 7, 1991, which sustained appellee's preliminary objections and dismissed appellant Paul Westhead's complaint. The lower court determined that appellee Bruce Fagel, Esquire did not possess contacts with Pennsylvania sufficient to subject him to *in personam* jurisdiction. In addition, the court concluded that trial of Westhead's defamation suit in Pennsylvania would be improper under the doctrine of *forum non conve-*

*niens.* Westhead herein challenges both rulings of the court below. Having reviewed the record, we find that the lower court properly sustained appellee's preliminary objections to the exercise of *in personam* jurisdiction by the courts of Pennsylvania.[1] Accordingly, we affirm.

The record reveals the following facts: The present defamation action is related to the action of *Lucille Gathers, et al. v. Loyola Marymount University, et al.,* Superior Court of California, No. C759027, filed in the California Superior Court, Los Angeles County. Therein, plaintiffs allege, *inter alia,* that the negligence of Westhead, the former Loyola Marymount University head basketball coach, contributed to the death of Eric "Hank" Gathers, a Loyola Marymount basketball "star".

While at Loyola Marymount, Gathers collapsed during a basketball game on December 9, 1989. After the collapse, Gathers was diagnosed as having a cardiac arrythmia. Gathers' physicians prescribed the medication, Inderal, and permitted Gathers to resume playing basketball. Inderal is known to produce certain side effects, including sluggishness and the inhibition of muscle coordination. After he was initially prescribed Inderal, Gathers' physicians reduced the amount of Inderal on several occasion. On March 4, 1990, Gathers collapsed again during a basketball game and died.

Fagel filed suit against Loyola Marymount, Westhead and Gathers' physicians on behalf of Hank Gathers' heirs on April 16, 1990. Fagel deposed Westhead in July of 1990, and he deposed Vernon Hattori, M.D., one of Gathers' physicians, in August and October of 1990. In January of 1991, Fagel held a press conference in Los Angeles, California. Reporters from the Los Angeles Times, the Associated Press and United Press International attended the media event. During the press conference, Fagel made the following, allegedly defamatory statements:

1. Having determined that *in personam* jurisdiction does not lie in Pennsylvania, we need not address the issue of *forum non conveniens.*

a. That if it were not for Paul Westhead[,] Hank gathers would be alive today.

b. That Paul Westhead acknowledged in his deposition that he had asked that Hank Gathers' medication be reduced.

c. That Dr. Hattori acknowledged in his testimony that Westhead had requested medication reduction.

d. The impetus for all the reductions of Hank's medication—except the first one—were instigated by Westhead.

Westhead contends those statements are false. Westhead also contends that Fagel "has exploited the press throughout this litigation to accomplish objectives which he considered to be beneficial to the presentation of his case." Westhead's Brief, p. 7. Specifically, Westhead submits that Fagel timed his allegedly defamatory remarks to coincide with a hearing before the California Superior Court on a motion to dismiss his clients' suit for lack of standing. Westhead's Brief, pp. 7–8.

The statements made by Fagel were published in Pennsylvania on January 19, 1991, and January 20, 1991, in the *Philadelphia Daily News* and the *Philadelphia Inquirer*, respectively. Although Westhead was a citizen of California at the time the suit was filed, Westhead avers publication of those allegedly false statements in Pennsylvania substantially damaged his reputation in this forum. He submits that he was raised in Philadelphia, began his basketball career there and built his reputation as a basketball coach in "the city of brotherly love." Westhead claims to have many family members and friends who reside in the Philadelphia area. In addition, Hank Gathers was from Philadelphia and his family still resides there. Westhead argues that by virtue of Westhead's and Gathers' ties to Philadelphia, there is significant media interest in the Gathers' case in Pennsylvania. Therefore, Westhead asserts Fagel knew or should have known that his statements would be published in Pennsylvania, and that they would cause substantial damage to him in this forum.

In opposition to jurisdiction in Pennsylvania, Fagel emphasizes that both parties are residents of California, that he is neither licensed to practice law in Pennsylvania nor does he regularly conduct business in this Commonwealth, and he does not own property in this forum. Fagel also notes that the press conference was held in Los Angeles, California and that only members of the press from the Los Angeles area were invited to and actually attended the conference. Finally, he points out that the litigation underlying this defamation suit is currently pending in California Superior Court.

Turning to the question of whether *in personam* jurisdiction over Fagel exists in Pennsylvania, we reiterate the standards to be applied to such a question:

> The assertion of personal jurisdiction over a non-resident must fall within the terms of the state long-arm statute and must meet the constitutional standards of due process.... Because the reach of the Pennsylvania Long–Arm Statute is "co-extensive with requirements of due process under the Fourteenth amendment to the United States Constitution," our controlling consideration here is "whether [defendant] had sufficient minimum contacts with this forum to make the exercise of jurisdiction permissible." ...

*Nissley v. JLG Industries, Inc.,* 306 Pa.Super. 557, 559, 452 A.2d 865, 866 (1982) (citations omitted); see generally *Kenny v. Alexson Equipment Co.,* 495 Pa. 107, 432 A.2d 974 (1981); 42 Pa.C.S.A. § 5322.

In *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804, 811 (1984), the United States Supreme Court explained:

> The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278

(1940) ]." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). See also *Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980). The plaintiff's lack of "contacts" will not defeat jurisdiction, see *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779–781, 104 S.Ct. 1473, 1480–1482, 79 L.Ed.2d 790 (1984), but they may be so manifold as to permit jurisdiction when it would not exist in their absence.

 Applying the aforementioned law, we find that the lower court was correct when it ruled that Fagel lacked sufficient minimum contacts with Pennsylvania so as to subject him to the exercise of personal jurisdiction. Instantly, both Fagel and Westhead are residents of California. Fagel has essentially no ties to the Commonwealth, except that his clients in the case of *Gathers, et al. v. Loyola Marymount, et al.,* are residents of Pennsylvania. The allegedly defamatory statements concerned a lawsuit pending in California Superior Court and were uttered in California to members of the California press. Although Westhead has some contacts with Pennsylvania, they are not so "manifold" as to warrant jurisdiction in the present circumstances, since Fagel has essentially no contacts with this forum. Fagel's contacts with the Commonwealth are not sufficient for him to "reasonably anticipate being haled into [Pennsylvania] court" to answer for the truth of his statements. *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. at 1487, quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Westhead compares this case to that of *Calder v. Jones, supra.* Therein, the United States Supreme Court found personal jurisdiction was proper in California over Florida defendants. The Florida defendants had written and edited an article in Florida which was published in the National

Enquirer, a national magazine having its largest circulation in California. The plaintiff, a professional entertainer who lives and works in California and whose television career was centered there, was the subject of the allegedly defamatory article. The Supreme Court found personal jurisdiction was proper because: "In sum, California is the focal point both of the story and of the harm suffered." *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. at 1486. The Court further explained: "In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper." 465 U.S. 783, 104 S.Ct. at 1487.

Clearly, our case differs significantly from *Calder v. Jones, supra.* Fagel's actions were not directed at the Commonwealth of Pennsylvania but rather were directed at California where Westhead is a resident and where the *Gathers* lawsuit is pending. Even Westhead recognizes this fact since he asserts that Fagel specifically made the statements to influence beneficially his client's pending California lawsuit.[2] Although Westhead's reputation in Pennsylvania may have been injured, the focal point both of the harm suffered and the alleged defamatory statements is California. Under the circumstances, we do not believe Fagel's actions were such that he would reasonably antici-

**2.** Although it may have been "foreseeable" that Fagel's statements would be published in Pennsylvania given Westhead's and Gathers' ties with the Commonwealth, foreseeability alone is not enough to warrant the exercise of *in personam* jurisdiction. In *Skinner v. Flymo, Inc.,* 351 Pa.Super. 234, 239, 505 A.2d 616, 619 (1986) citing, *Burger King v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) quoting, *World–Wide Volkswagen,* 444 U.S. at 294, 100 S.Ct. at 565–66, we stated:

The critical question in determining whether the defendant has purposely directed his activities at residents of the forum is not whether it was foreseeable that defendant's activities would have an injurious effect in the forum state, but whether the defendant's conduct and his connections with the forum state were such that he could reasonably anticipate being "haled" into court there.

Certainly, Fagel's conduct in California and contacts with that state may give him reasonable cause to anticipate a defamation suit in California, but certainly not in the Philadelphia County Court of Common Pleas.

pate being haled into Pennsylvania courts to answer for the truth of his statements. *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. at 1487. Personal jurisdiction over Fagel does not lie in Pennsylvania.

Order affirmed.